# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

—————

No. 07-6063

—————

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Anne B. Lasowski, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| David D. Coop, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Trustee - Appellant, | * | Eastern District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Anne B. Lasowski, | * | |
| | * | |
| Debtor - Appellee. | * | |

—————

Submitted: February 27, 2008
Filed: March 31, 2008

—————

Before SCHERMER, FEDERMAN, and MCDONALD, Bankruptcy Judges

SCHERMER, Bankruptcy Judge

**ISSUE**

A Chapter 13 debtor may repay loans from qualified retirement plans during the course of the Chapter 13 proceeding. The issue on appeal is how the amounts required to repay such loans are calculated.

**FACTS**

Chapter 13 Debtor Anne B. Lasowski ("Debtor") has monthly income of $3,820.05 and monthly expenses of $3,467.66, resulting in **net** monthly income of $352.39. Projected over sixty months, the Debtor will have $21,143.40 excess income during the life of her plan. From this figure we must deduct amounts required to repay the Debtor's 401(k) loans in order to calculate the amount she is required to pay to her unsecured creditors through the plan. The amount which must be paid to unsecured creditors is otherwise known as her "disposable income."

As of the petition date, the Debtor owed six monthly payments of $50 pursuant to one 401(k) loan, for a total amount due of $300, and thirteen monthly payments of $100 pursuant to another 401(k) loan, for a total amount due of $1,300. The question we must decide is what number is deducted from the Debtor's $21,143.40 excess income figure to determine disposable income.

David D. Coop, Chapter 13 Trustee ("Trustee"), believes the correct number is the $1,600 total balance due under the two loans. Under the Trustee's analysis, the Debtor must pay her unsecured creditors $19,543.40 ($21,143.40 minus $1,600) under her plan.

The Debtor believes the correct number is $9,000 which she calculates as the combined monthly payments of $150 multiplied by the sixty months of the plan. Under the Debtor's analysis, she is only required to pay unsecured creditors

$12,143.40 ($21,143.40 minus $9,000) and she is entitled to keep the extra $7,400.00 ($19,543.40 minus $12,143.40) which she will earn over the sixty-month plan period.

The bankruptcy court agreed with the Debtor's calculations and confirmed her plan, in essence allowing the Debtor to keep the extra $7,400.00 she will earn over the life of her plan. We agree with the Trustee's position and conclude that the Debtor may only deduct the actual amounts necessary to repay her 401(k) loans when calculating disposable income. Once the loans are repaid the Debtor must **redirect** the funds used to repay the loans to unsecured creditors. She may not keep them. Accordingly, we reverse.

## STANDARD OF REVIEW

The facts are not in dispute. The bankruptcy court's statutory construction is a conclusion of law which we review *de novo. Colsen v. United States (In re Colsen)*, 446 F.3d 836, 839 (8th Cir. 2006); *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 830 (B.A.P. 8th Cir. 2007).

## DISCUSSION

### I.   Disposable Income Under Section 1325

Section 1325 of the Bankruptcy Code sets forth the conditions for confirmation of a Chapter 13 plan. 11 U.S.C. § 1325. The condition at issue here is the requirement that the Debtor pay all projected disposable income received during the life of the plan to her unsecured creditors. 11 U.S.C. § 1325(b)(1)(B).[1]

---

[1] The statutory language of 11 U.S.C. § 1325(b)(1) follows:

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as

Disposable income is defined in the Bankruptcy Code as current monthly income[2] less certain reasonably necessary expenses.[3]  11 U.S.C. § 1325(b)(2).  Reasonably necessary expenses differ between debtors who earn more than the median income for a household of the same size as the debtor's in the debtor's state of residence[4] and for debtors who earn the median or less than the median income for a household of the same size as the debtor's in the debtor's state of residence.  The Debtor is an above-median income debtor.  As such her reasonably necessary expenses are calculated by reference to Section 707(b)(2) of the Bankruptcy Code. 11 U.S.C. § 1325(b)(3).

---

of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the **applicable commitment** period beginning on the date that the first payment is due under the plan will be applied to make payments **to unsecured creditors** under the plan.

The bold language highlights changes enacted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

[2]  Current monthly income is defined as the average monthly income received by the debtor during the six full months preceding the bankruptcy petition date.  11 U.S.C. § 101(10A).

[3] The relevant expenses are the amounts reasonably necessary to be expended (i) for the maintenance or support of the debtor or a dependent of the debtor or for a domestic support obligation that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (subject to a maximum). 11 U.S.C. § 1325(b)(2)(A).

[4] Such a debtor is referred to as an above-median income debtor.

**II.     The Section 707(b) Formula for Calculating Reasonably
Necessary Expenses of Above-Median Income Debtors**

Section 707(b) of the Bankruptcy Code authorizes the court to dismiss the Chapter 7 case of an individual debtor whose debts are primarily consumer debts if the court determines that granting relief under Chapter 7 would be an abuse of the provisions of Chapter 7.  11 U.S.C. § 707(b)(1).  Prior to the enactment of BAPCPA, courts had discretion to determine if relief under Chapter 7 would be a substantial abuse.  BAPCPA removed the "substantial" qualifier and created a formula under which abuse is presumed to exist.  11 U.S.C. § 707(b).  The formula uses the debtor's current monthly income as a starting point.  From current monthly income the formula provides for the deduction of monthly expense amounts specified in the Internal Revenue Service's National Standards and Local Standards and the debtor's actual monthly expenses for categories of expenses specified as Other Necessary Expenses by the Internal Revenue Service; payments due on secured debts during the sixty months following the petition date; and payment of all priority claims.  11 U.S.C. § 707(b)(2)(A).  The formula directs that income and expenses be calculated on a monthly basis and then multiplied by sixty to determine if the presumption of abuse arises.  *Id.*  The parties agree on the application of the Section 707(b) formula in the Debtor's case.  However, the Section 707(b) formula alone does not completely determine a Chapter 13 debtor's disposable income for purposes of plan confirmation.[5]  The amount necessary to

_____

[5] The Section 707(b) formula does not mention the repayment of loans from qualified retirement plans.  Consequently, such loans are not considered when calculating a presumption of abuse in the Chapter 7 context.  *In re Mowris*, 2008 WL 732171 (Bankr. W.D. Mo.); *In re Mordis*, 2007 WL 2962903, at *5 (Bankr. E.D. Mo.); *In re Whitaker*, 2007 WL 2156397, at *5 (Bankr. N.D. Ohio); *In re Lenton*, 358 B.R. 651, 660 (Bankr. E.D. Pa. 2006); *In re Barraza*, 346 B.R. 724, 733 n.5 (Bankr. N.D. Tex. 2006).  Accordingly, Official Form 22A, the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation does not include a place to deduct repayments to loans from qualified retirement plans.

repay 401(k) loans must also be taken into consideration when calculating disposable income in the Chapter 13 plan confirmation context because Section 1322 of the Bankruptcy Code expressly excludes amounts required to repay a loan from a qualified retirement plan from disposable income in the Chapter 13 context.  11 U.S.C. § 1322(f).[6]

### III.   The Exclusion of 401(k) Loan Repayment Amounts Under Section 1322(f)

The language of Section 1322(f) is clear: "any amounts **required** to repay [a 401(k)] loan shall not constitute 'disposable income' under Section 1325." 11 U.S.C. § 1322(f) (emphasis added).  Only amounts **required** to repay the Debtor's 401(k) loan are excluded from disposable income.  Only $1,600 is **required** to repay the Debtor's 401(k) loans.  Therefore, only $1,600 is to be

---

[6] Subsection (f) of Section 1322 states as follows:

> A plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute "disposable income" under section 1325.

11 U.S.C. § 1322(f).  Section 362(b)(19) of the Bankruptcy Code excludes from the operation of the automatic stay the withholding of income from a debtor's wages and the collection of amounts withheld under the debtor's agreement authorizing such withholding and collection for the benefit of certain employer sponsored pension, profit-sharing, stock bonus, or other plans authorized under certain sections of the Internal Revenue Code (referred to as qualified plans) to the extent the amounts withheld are used solely for payments relating to a loan from such qualified plan.  11 U.S.C. § 362(b)(19).

In contrast to Official Form 22A used in Chapter 7 cases, Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, includes a provision for qualified retirement deductions in line 55.

excluded from the Debtor's $21,143.40 excess income figure to determine her projected disposable income of $19,543.40. This amount – $19,543.40 – is the amount which the Debtor must pay her unsecured creditors through her plan in accordance with Section 1325(b)(1)(B).

## IV. Official Form 22C

Every Chapter 13 debtor is required to complete Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income. This form provides the basis of the calculation of a Chapter 13 debtor's disposable income. The form is divided into seven sections. In Part I, the debtor must report income. In Part II, the applicable commitment period is calculated. In Part III, the determination is made as to whether or not the debtor is an above-median income debtor. In Part IV, the Section 707(b) formula calculations are made for above-median income debtors. In Part V, disposable income is determined by deducting support income, qualified retirement deductions, means test deductions, and special circumstance deductions from income. Part VI provides for additional expense claims not found elsewhere on the form. Part VII requires the debtor's declaration under penalty of perjury that the information contained in the form is true and correct.

The exclusion from income for payments to loans from qualified retirement plans is included on line 55 in Part V of Form 22C. The instructions for line 55 for qualified retirement deductions direct the debtor to enter the "monthly average" of "all contributions or wage deductions made to qualified retirement plans, as specified in Section 541(b)(7)" and "all repayments of loans from retirement plans,

7

as specified in Section 362(b)(19)."[7] This latter item is the subject of the present dispute.

The Debtor argues that the term "average" on line 55 of Form 22C implies that the loan repayment amounts should be calculated on a historical basis in the same manner current monthly income is calculated under the Section 707(b) formula. According to the Debtor, the Section 707(b) formula expressly provides for debts which are intended to be pro-rated over the life of the plan to be calculated by determining the total amount to be paid during the plan divided by sixty. See, e.g. 11 U.S.C. § 707(b)(2)(A)(iii)(secured debts) and (iv)(priority debts). The Debtor argues that the Bankruptcy Code contains no such language with respect to qualified retirement plan loan repayments and therefore they should not be calculated in the same way as secured and priority debts.

We disagree. In the first place, the statute controls this determination, not an official form. *In re Arnold*, 376 B.R. at 653; *In re Graham*, 363 B.R. at 850. The statute is clear that the Debtor may only exclude amounts required to repay a loan from a qualified retirement plan from disposable income in the Chapter 13 context. 11 U.S.C. § 1322(f). Thus the Debtor's deduction is limited to the actual loan repayment amount, not the current monthly payment multiplied by the life of the

---

[7] The instructions for line 55 of Form 22C have been changed to now require the debtor to enter the "monthly total of (a) all amounts withheld by your employer from wages as contributions for qualified retirement plans, as specified in § 541(b)(7) and (b) all required repayments of loans from retirement plans, as specified in § 326(b)(19)." See B22C (Official Form 22C) (Chapter 13) (01/08). The new language does not change the result reached herein because it is the statutory language of Section 1322(f) and not the instructions on a form which dictates this result. *In re Arnold*, 376 B.R. 652, 653 (Bankr. M.D. Tenn. 2007); *In re Graham*, 363 B.R. 844, 850 (Bankr. S.D. Ohio 2007). Furthermore, both versions of Form 22C are consistent with the statute.

plan. To the extent the Debtor attempts to interpret Form 22C inconsistently with the statute, her interpretation is incorrect.

Moreover, the Debtor's focus on the language of the Section 707(b) formula is misguided. The Section 707(b) formula does not control the exclusion of 401(k) loan repayments from disposable income in the Chapter 13 context and therefore its application has no bearing on line 55 of Form 22C. Rather Section 1322(f) governs 401(k) loan repayments in the Chapter 13 context and limits the exclusion to amounts required to repay 401(k) loans. Consistent with this principle, Form 22C distinguishes between expenses authorized under the Section 707(b) formula and those governed by other sections of the Bankruptcy Code by separating them into different sections of the form. Accordingly, deductions allowed under the Section 707(b) formula are set forth in Part IV of the form while the calculation of 401(k) loan repayment amounts is included in Part V.

Line 55 of Form 22C directs the Debtor to calculate the average amount required to repay her 401(k) loan. Since the Debtor owes $1,600 on the 401(k) loans, the Debtor is entitled to a monthly deduction of $26.66 on line 55. This amount is calculated by dividing the $1,600 loan balance by the sixty-month duration of the plan. This result follows regardless of the size of the payment the Debtor is making toward the loan on the bankruptcy petition date because only amounts required to repay 401(k) loans are excluded from disposable income.

V.    **The Section 1322(f) Prohibition Against Material Alteration to the Repayment Terms of a 401(k) Loan Does Not Impact the Calculation of Disposable Income**

The Debtor argues that calculating her 401(k) loan balances on a monthly basis violates Section 1322(f) of the Bankruptcy Code which, in addition to excluding loan repayment amounts from disposable income in the Chapter 13 context, also prohibits any material alteration to the repayment terms of a qualified

9

retirement plan loan. We disagree. The calculation embodied in Part V of Form 22C, which includes line 55, is the determination of the Debtor's disposable income under Section 1325(b)(1)(B) of the Bankruptcy Code for the purposes of confirmation of a contested Chapter 13 plan. This calculation determines the total amount the Debtor is required to pay her unsecured creditors through her plan. This calculation does not control how or when payments are to be made to unsecured creditors under the plan.

Section 1322 of the Bankruptcy Code sets forth what a plan must do, what a plan may do, and what a plan may not do. One of the things a plan may not do is materially alter the repayment of a 401(k) loan. 11 U.S.C. § 1322(f). If the Debtor is obligated to repay her 401(k) loans at the rates of $100 per month and $50 per month respectively, she may continue to do so post-petition. Indeed, automatic deductions from the Debtor's paychecks for repayment of these loans continue post-petition uninterrupted by the bankruptcy filing and unaffected by the automatic stay. 11 U.S.C. § 362(b)(19). Therefore, the Debtor will fully repay one 401(k) loan in the sixth month of her plan. Accordingly, she will have $50 additional income in the seventh month of her plan which she should add to her plan payment at that time and thereafter. Likewise, she will fully repay her second 401(k) loan in the thirteenth month of the plan and will have $100 additional monthly income to add to her plan payment in the fourteenth month of the plan and thereafter.

If the Debtor elects to propose a plan in accord with this opinion, payments to unsecured creditors will likely be back-loaded, either with no distributions until later in the term of the plan or with distributions to unsecured creditors increasing after satisfaction of the 401(k) loans. This result is consistent with the statutory

10

scheme governing Chapter 13 which permits a plan in which payments are stepped-up during the life of the plan.[8]  Such plans are common.

## VI.    Applicable Case Law

Courts are divided on this issue.  However, our analysis of this issue is supported not only by the plain language of the statute, but by the majority of courts which have interpreted this language.  Our conclusion is also consistent with the purpose of BAPCPA's amendments to Sections 707(b) and 1325(b): to require above–median income debtors to make more funds available to unsecured creditors.  *Babin v. Wilson (In re Wilson)*, 2008 WL 681102, at *3 (B.A.P. 8th Cir.).

When faced with the identical issue, courts in Nebraska and Texas reached the same result we reach.  The United States Bankruptcy Court for the District of Nebraska noted that a 401(k) loan repayment

> is not the type of deduction from income that is governed by the mechanical calculations of §§ 1325(b)(3) and 707(b)(2).  Instead § 1322(f) stands on its own and is quite clear. . . . Prorating the loan payment amount over the applicable commitment period is the only way to ensure that the amount required to repay the loan (and *only* the amount required to repay the loan) will be excluded from the disposable income calculation.

---

[8] For example, a plan must account for a change in circumstances that will assuredly occur and will significantly alter the amount of the debtor's disposable income.  *In re Nowlin*, 366 B.R. 670, 674-75 (Bankr. S.D. Tex. 2007), *aff'd* 2007 WL 4623043 (S.D. Tex.).   An increase in the debtor's monthly plan payment is one way to accomplish this.  *In re Novak*, 379 B.R. 908, 911 (Bankr. D. Neb. 2007).

*In re Novak*, 379 B.R. at 911. The court held that prorating or averaging the 401(k) loan repayment over the 60-month term of the plan for purpose of calculating disposable income did not impermissibly modify the terms of the loan as prohibited by Section 1322(f). The court noted that

> the means test calculation is simply that – a calculation. Its purpose is to determine the amount of the debtor's projected disposable income that must be returned to unsecured creditors over the life of the plan. It does not, by itself, establish the debtor's plan payment nor the order in which claims will be paid.

*Id.* The court acknowledged that the plan payment may be "stepped up" once the 401(k) loan is paid in full and that such a plan would not modify the loan yet would ensure the proper return to unsecured creditors. *Id.*

The United States Bankruptcy Court for the Southern District of Texas reached the same result and noted that requiring a debtor to increase plan payments after paying off a 401(k) loan serves both the Congressional intent to protect retirement contributions and to ensure that debtors repay creditors the maximum they can afford, a primary goal of BAPCPA. *In re Nowlin*, 366 B.R. at 675, citing *In re Lenton*, 358 B.R. at 660, which in turn cited H.R. Rep. 109-31, pt. 1 at 1, *as reprinted in* 2005 U.S.C.C.A.N. 88, 89 (2005). The United States District Court for the Southern District of Texas recently affirmed the *Nowlin* decision, simply noting that "[w]hen an allowed deduction for her current consumption no longer exists, the amount that had been applied to that expense shifts to pay the people she owes." *In re Nowlin*, 2007 WL 4623043, at *1. This statement applies equally to this Debtor.

Those courts which have reached a different result have confused the Section 707(b) formula with the provisions of Section 1322 which exclude from disposable income amounts necessary to repay 401(k) loans and prohibit material

alterations to a 401(k) loan. The confusion arises when the 401(k) loan repayment amount is expressed as a monthly figure for the length of the plan. This is done in Form 22C presumably to be consistent with the figures for income and Section 707(b) expenses which are calculated on a monthly basis. The form could have instead calculated the debtor's net income on a monthly basis (income minus Section 707(b) expenses), multiplied that figure by the number of months in the plan to calculate total net income during the life of the plan, and then subtracted the amount required to repay 401(k) loans from the total net income figure to calculate disposable income – the sum of money which must be paid to unsecured creditors under the plan. This is the approach we used when we identified the issue at the beginning of this opinion.

Additionally, courts that have reached the opposite result have confused the calculation of disposable income required to be paid under a plan with the terms of the plan itself. For example, the United States Bankruptcy Court for the Northern District of Illinois required current 401(k) loan repayment amounts to be deducted from the calculation of disposable income over the life of the plan rather than the actual balance of the loan on the basis that so doing would materially alter the loan repayment terms in violation of Section 1322(f). *In re Wiggs*, 2006 WL 2246432, at *3 (Bankr. N.D. Ill.). We have explained above why we disagree with this conclusion. The United States Bankruptcy Court for the District of New Hampshire which reached the same result acknowledged the rights of the trustee and the unsecured creditors to seek modification of the plan to increase plan payments once the debtor's 401(k) loan is repaid. *In re Haley*, 354 B.R. 340, 344 (Bankr. D. N.H. 2006). Our approach eliminates the need for later modification by ensuring that all available disposable income is committed to unsecured creditors in the original plan.

Finally, many courts which have addressed the issue of whether 401(k) loan repayments are deductible under the Section 707(b) formula in the Chapter 7

context have acknowledged that in a Chapter 13 plan a debtor would be required to redirect funds used to repay 401(k) loans to unsecured creditors once such loans have been repaid. *In re Mordis*, 2007 WL 2962903, at \*5; *In re Whitaker*, 2007 WL 2156397, at \*5; *In re Lenton*, 358 B.R. at 660; *In re Barraza*, 346 B.R. at 733 n.5.[9] This is the mandate of Section 1322(f).

## CONCLUSION

Section 1325 of the Bankruptcy Code requires the Debtor to deliver all disposable income during the life of the plan to her unsecured creditors. Pursuant to Section 1322(f) only amounts required to repay 401(k) loans are excluded from disposable income. Therefore, for purposes of calculating disposable income in the plan confirmation context, only the actual balance required to repay the Debtor's 401(k) loan is excluded from disposable income. The Debtor is not allowed to continue to deduct payments on account of 401(k) loans after the loans have been repaid. Instead the Debtor must redirect the funds used to repay the loans to unsecured creditors once the loans are repaid. The opinion of the Bankruptcy Court confirming the Debtor's plan is REVERSED.

---

[9] See also *In re Frederickson*, 375 B.R. at 829 (Federman, J., dissenting), a decision addressing the applicable commitment period for a Chapter 13 plan, wherein the dissent acknowledged that repayment of loans from certain pension and profit sharing plans would not continue throughout the entire Chapter 13 case.

14