**In re Cherise Roundy BLACK, Debtor.**

**Steve S. Christensen, Appellant,**

**v.**

**Cherise Roundy Black and Andres Diaz, Trustee, Appellees.**

**BAP Nos. UT–01–093, UT–02–045. Bankruptcy No. 99C–27020.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

May 13, 2003.

---

Steve S. Christensen, pro se.

Candace S. Bridgess and J. Paul Stockdale, Ogden, UT, for Appellee Cherise Roundy Black.

Before McFEELEY, Chief Judge, PUSATERI, and CORDOVA [1], Bankruptcy Judges.

1. The Honorable Donald E. Cordova, Chief Bankruptcy Judge for the District of Colorado, heard oral argument in this appeal but passed away February 16, 2003. However, he had fully considered the matter and concurred in the panel's resolution of the appeal, although the final opinion was written after his death.

## OPINION

PUSATERI, Bankruptcy Judge.

Steve S. Christensen ("Christensen") appeals from the bankruptcy court's order confirming the Debtor's Chapter 13 plan and its later order allowing modification of the Debtor's confirmed plan. We will affirm the order confirming the plan but reverse the order allowing modification, and remand the case for further proceedings.

### Background

Christensen is an attorney who represented Debtor Cherise Roundy Black ("Debtor") during part of her pre-bankruptcy divorce case. Their agreement for the representation provided that his fee would be secured by a lien on her file and papers, and her share of the property division ordered in the divorce. The state divorce court ordered the Debtor's ex-husband to pay $15,655.22 of her attorney and expert witness fees and expenses, but denied a request for him to pay another $15,892 of her attorney fees. Christensen also claims that an attorney's lien imposed under Utah law secures his fees.

The Debtor filed a Chapter 13 bankruptcy petition and a plan on July 1, 1999. Christensen filed a proof of claim for $41,428.66 in attorney fees and prepetition interest, asserting the claim was secured by a lien on a judgment awarded to the Debtor by the state court in the divorce. The Debtor objected to Christensen's claim. The Debtor also amended her plan before the first confirmation hearing date, and Christensen filed an objection to the amended plan. Neither of the Debtor's plans has been included in the record on appeal, but in his objection, Christensen alleged that his entire claim was secured, that his fees were reasonable, and that the amended plan should not be confirmed unless it was amended to treat his claim as

secured and pay 10% postpetition interest on it. The Debtor amended her plan again on February 16, 2000 ("February 2000 Plan"), after Christensen filed his objection to confirmation, but this plan is also not included in the record on appeal.

The bankruptcy court resolved the Debtor's objection to Christensen's claim by allowing it in a substantially reduced amount, with 10% interest to be paid on it through the Debtor's plan. The Debtor's plan was then confirmed on April 10, 2000 ("Original Confirmation Order"), treating Christensen's claim as allowed by the court. Christensen appealed both the order reducing his claim and the Original Confirmation Order. A previous panel of this Court reversed the orders and remanded for further proceedings ("Remand Order").

While the appeal that resulted in the Remand Order was pending, the Debtor sought sanctions against Christensen for violating the automatic stay, which the bankruptcy court granted shortly after the appeal was decided. A few months later, Christensen filed an amended proof of claim that asserted the same $41,428.66 secured claim, but changed the amount stated for any "arrearage and other charges" included in the secured claim from "$3,778.60" to "$100,000.00 or more." No support for this arrearage was included with the proof of claim, nor was any information given to explain how a $40,000 claim could include an arrearage of $100,000. At a subsequent hearing on the allowable amount of Christensen's claim, the bankruptcy court determined that only part of Christensen's claimed fees were reasonable and, offsetting the sanctions order and an amount the Debtor had paid Christensen, announced that the claim would be allowed as $10,000.

After the Remand Order but before the new hearing on the amount of his claim,

Christensen filed another objection to confirmation of the Debtor's plan, although the Debtor had not amended her plan since she filed the February 2000 Plan. Christensen's objection stated only that the plan did not correctly set forth the amount of his claim as contained in his original and amended proofs of claim. About two weeks after the bankruptcy court announced its ruling determining the amount of Christensen's claim, the Debtor's February 2000 Plan came on for a confirmation hearing. Three attorneys appeared at the hearing, one for the Debtor, one for the Chapter 13 Trustee, and one who said she was appearing "on behalf of the creditor."[2] This last attorney said nothing else during the hearing, but the Trustee's attorney gave an indication that the attorney was from the office of the attorney who, acting as Christensen's attorney, had signed the latest objection to confirmation, as well as some other pleadings. Christensen's objection to confirmation was mentioned, and the Trustee's attorney said he thought the objection had been resolved at a prior hearing. No one said anything in support of Christensen's objection. The bankruptcy court announced that the plan would be confirmed. In a cryptic comment whose significance will become clear later in this opinion, during the hearing, the Trustee's attorney also said, "[T]here is not a lump sum con-

tribution due to the nature of this particular case."[3]

A short time later, a written order confirming the February 2000 Plan ("Second Confirmation Order") was entered. Among other things, the Second Confirmation Order said, "In accordance with a prior Order of the Court, Claim No. 6 filed by STEVE S. CHRISTENSEN is allowed as a secured claim in the amount of $10,000.00, together with interest thereon at the rate of 10% per annum, and a nonpriority unsecured claim in the amount of $630.00." Nothing in the record on appeal explains where the $630 unsecured claim came from.

About a week after entry of the Second Confirmation Order, a written order was entered that apparently formalized the bankruptcy court's ruling determining the amount of Christensen's claim ("Claim Order"), but that order is not included in the record on appeal. The next day, an order amending the Second Confirmation Order was entered, but it made no changes related to Christensen. In December 2001, Christensen filed a timely notice of appeal of the Second Confirmation Order. That appeal is before us as BAP No. UT–01–093.[4]

Christensen also filed a motion to reconsider the Claim Order. After that motion was denied, he appealed the Claim Order and the denial of reconsideration, and the

---

2. Hearing Transcript at 3, *in* Appellant's Appendix in BAP No. UT–01–093 at 122.

3. *Id.*

4. This Court issued two notices of deficiency and orders to show cause to the Debtor for relatively minor violations of our rules in BAP No. UT–01–093. One of the orders concerned her failure to file an entry of appearance as required by the rules applicable to this case. In response, the Debtor filed a statement of interested parties as required by our rules as amended for appeals filed later than this one was. Filing the newer form substantially

complied with our rules, and we waive this deficiency. The other order concerned the Debtor's failure to paginate the appendix to her brief. The Debtor made no attempt to cure this deficiency. While we cannot condone this error, the lack of pagination has not materially interfered with our consideration of this appeal, so we will excuse it in this case. The Debtor's counsel is admonished to comply with this requirement in the future. We note that counsel did paginate the appendix filed later in the other appeal covered by this opinion.

Debtor cross-appealed. We recently affirmed those bankruptcy court rulings by an unpublished opinion in BAP Nos. UT–02–065 and UT–02–066, filed March 13, 2003 ("Affirmance of Claim Order"). On March 31, 2003, we denied Christensen's motion for rehearing in those appeals.

In March 2002, the Chapter 13 Trustee filed a motion to dismiss the Debtor's case. The Debtor filed a "Response/Objection," and a short time later, filed another amended plan, along with amended schedules of her income and expenses. Christensen filed an objection to the Debtor's response and to her amended plan. None of these documents is included in the record on appeal, but the matters were heard by the bankruptcy court on May 1, 2002. As shown by the transcript[5] of that hearing, the Trustee, the Debtor, and Christensen all appeared by counsel. The Debtor's counsel indicated that she had spoken to the Trustee, and had determined that the Debtor's plan could be made feasible if the court would let her make "a lump sum contribution"[6] to the plan, apparently referring to payments she had already made to the Trustee through November 2001, abate some other payments, and then allow her to pay $315 per month into the plan. The Trustee's attorney stated that the plan could remain feasible with the Debtor's proposed reduction in plan payments only "if we do contribute the funds paid in to the Trustee prior to confirmation."[7] Among other things, Christensen's attorney said she did not know until immediately before the hearing that the Debtor was going to propose a lump sum contribu-tion, a proposal different from the one noticed to creditors. She added that she knew the courts on occasion allowed a lump sum contribution, but seemed to indicate the Debtor's proposed contribution was larger than normal. The size of the contribution bothered her and would bother Christensen, but she had not had a chance to look at it because it came up just before the hearing. The Debtor's attorney suggested the proposal would probably speed up payment to Christensen. Then the court ruled: "Lump sum contribution will be allowed. 1125 dollars will be abated. Debtor is ordered to continue payments in the amount of 315 dollars a month."[8] A minute entry on the bankruptcy court's docket for May 1 repeats this ruling. The only other item in the record that tells us anything about the pleadings and arguments raised before or at the May 1 hearing is a written order that was entered later as a result of the hearing. The order, labeled "Order on Objection to Trustee's Motion to Dismiss," states that the Trustee's motion to dismiss was denied, and that the court also ordered:

2. That a lump sum contribution is allowed of all plan payments from the first payment through November 2001's payment, in the amount of $11,728.00.

3. That the debtor's new plan payment is approved in the amount of $315.00 per month for a period of 54 months, commencing with the payment due May 5, 2002.[9]

Because of these provisions, we will refer to this order as the "Plan Modification Order." Christensen filed a notice of ap-

---

**5.** Christensen has filed a motion to add the transcript to the appendix to his brief in BAP No. UT–02–045, alleging that it was inadvertently omitted. The motion is not opposed, and we therefore grant it.

**6.** Transcript added to Appellant's Appendix in BAP No. UT–02–045 at 3.

**7.** *Id.* at 4.

**8.** *Id.* at 6.

**9.** Plan Modification Order, *in* Appellant's Appendix in BAP No. UT–02–045 at 8.

peal after the bankruptcy court announced its ruling but before the Plan Modification Order was entered, so we treat his notice as timely.[10] This appeal is before us as BAP No. UT–02–045.[11]

On Christensen's motion, BAP Nos. UT–01–093 and UT–02–045 were consolidated for procedural purposes and were argued together. We will resolve both appeals in this opinion.

**Discussion**

*A. BAP No. UT–01–093, the Second Confirmation Order*

In his brief about the Second Confirmation Order, Christensen raises four issues. First, he contends that the bankruptcy court erred in considering the Debtor's income from child support payments as property of the bankruptcy estate that she could use to make plan payments. Second, he argues that the bankruptcy court erred by failing to award him postpetition costs of collection, including attorney's fees, in accordance with his contract with the Debtor. Third, he claims that the bankruptcy court erred by confirming a plan that allowed him only 10% interest on his claim, rather than the 18% interest set forth in the contract. Fourth, he asserts that the bankruptcy court erred in confirming the plan because the plan would not be feasible if the court granted his motion to reconsider the amount of his claim.

The Debtor alleges that Christensen never raised his first argument before the

bankruptcy court. In a reply brief, Christensen suggests that he raised the issue in a motion he had filed asking for an order prohibiting the use of cash collateral.[12] In that motion, however, he argued that he had a lien on child support and other payments that the Debtor's ex-husband was to make to her, so that the payments were his cash collateral. He did not claim that the child support payments were not property of the bankruptcy estate. We have found nothing else in the record to support Christensen's claim that he raised this issue before the bankruptcy court. Generally, arguments not presented below will not be considered for the first time on appeal.[13] We see no reason to make an exception for this argument.

Christensen's remaining arguments in BAP No. UT–01–093 all depend on his contention that the bankruptcy court did not allow his claim in the correct amount. Our Affirmance of the Claim Order and subsequent denial of rehearing resolved those arguments against Christensen, and we will not consider them again in this appeal.

For these reasons, the Second Confirmation Order will be affirmed.

*B. BAP No. UT–02–045, the Plan Modification Order*

In his appeal brief about the Plan Modification Order, Christensen raises two issues. First, he contends that the bankruptcy court erred by confirming a

---

10. *See* Fed. R. Bankr.P. 8002(a).

11. Christensen has filed a motion for an extension of time to file a reply brief in BAP No. UT–02–045. The motion is not opposed, so it is granted.

12. Christensen's brief gives the filing date of this motion as "7/20/02." The brief was filed on May 31, 2002, though, so the motion must have been filed before that date. The appen-

dix to his brief contains a motion for an order prohibiting the use of cash collateral that was filed on July 20, 2001. *See* Appellant's Appendix in BAP No. UT–01–093 at 56. We are satisfied that this is the motion to which he meant to refer.

13. *See Wade v. Bradford,* 39 F.3d 1126, 1130 (10th Cir.1994).

Chapter 13 plan that provided for payments to be made over a period longer than the five-year maximum set by 11 U.S.C. § 1329(c). Second, he contends that the court erred by confirming the Debtor's plan even though it does not provide that he will retain the lien that secures his claim. We agree with his first contention, but are not convinced he has shown a right to relief on his second. In his reply to the Debtor's brief, Christensen raises the additional issue that the Debtor's plan modification was not proposed in good faith. This issue has not been raised before, and comes much too late in a reply brief.

■■■■ The Debtor suggests that we should not consider Christensen's first issue because he did not raise it before the bankruptcy court. We must concede that the record on appeal contains nothing showing that the question was brought to the bankruptcy court's attention. Christensen's attorney indicated at the May 1, 2002, hearing only that the size of the lump sum contribution bothered Christensen, not that the contribution violated any provision of the Bankruptcy Code. However, while we generally will not consider an issue raised for the first time on appeal, we have discretion to and will do so under appropriate circumstances, such as when the proper resolution of the issue is beyond any doubt, or where injustice might otherwise result.[14] Because we are convinced that the bankruptcy court took action that is clearly contrary to the Bankruptcy Code, and in fact, may take this action on something of a regular basis, we will address this issue despite Christensen's failure to raise it before the bankruptcy court.

■ Section 1329 of the Bankruptcy Code establishes various requirements for modifying a plan after confirmation, and subsection (c) of that section declares:

A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.[15]

Similarly, § 1322 establishes various requirements for Chapter 13 plans that have not yet been confirmed, and subsection (d) of that section declares: "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years."[16] These provisions clearly demonstrate that Congress intended to limit to five years the total length of time that debtors can pay into Chapter 13 plans. Both the Original and Second Confirmation Orders recognized this limitation, providing that the Debtor would make payments for no more than sixty months, starting with the payment she was to have made in August 1999, within thirty days after she filed her bankruptcy petition and Chapter 13 plan.

In the Plan Modification Order, though, the bankruptcy court deemed all the Debtor's plan payments from the first one through the one for November 2001—a period of two years and four months—to constitute "a lump sum contribution," and then approved her proposal to make plan payments for another four years and six

---

**14.** *See Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Johnson v. Champion,* 288 F.3d 1215, 1228–29 (10th Cir.2002).

**15.** 11 U.S.C. § 1329(c).

**16.** 11 U.S.C. § 1322(d).

months, beginning with May 2002. (The record contains no clear explanation for the December–to–April gap between these dates, although the payment abatement in the Plan Modification Order probably covered at least some of it.) The Debtor's last payment under the Plan Modification Order would not be due until October 2006. This means the period from the Debtor's first payment to the Chapter 13 Trustee through her last payment under the Plan Modification Order would be seven years and three months. Even if we consider the permissible period to have begun with the first payment that became due after the Original Confirmation Order was entered in April 2000, the period would be six years and six months.

The parties informed us at oral argument that the Utah bankruptcy courts at least occasionally allow Chapter 13 plan modifications like this that make a plan exceed the five-year limit in § 1329(c). Such a practice would explain the Chapter 13 Trustee's otherwise cryptic statement about a "lump sum contribution" at the hearing that produced the Second Confirmation Order, and the parties' discussion of the matter at the May 1, 2002, hearing. We can only speculate that the courts believe calling all prior plan payments "a lump sum contribution" authorizes treating that "contribution" as "the first payment under the original confirmed plan" under § 1329(c) and considering it to have become "due" on the date of the plan modification, so the five-year time limit runs from that date. Perhaps the courts have simply overlooked the word "original" and apply the provision as if it read "the first payment under the confirmed plan," and construe the phrase to refer to the first

payment the debtor makes after the plan modification is allowed. Whatever the rationale may be, we cannot agree that this "lump sum contribution" method of plan modification satisfies the plan duration limit expressed in § 1329(c).

In her brief, the Debtor asserts, "It is well settled in this jurisdiction that a 'lump sum' contribution to the Chapter 13 plan is allowed." [17] The Debtor cites no authority for this assertion, and we can only conclude that she means the Utah bankruptcy courts have previously allowed this unusual, if not unique, lump-sum-contribution practice. The legislative history of the Bankruptcy Code indicates that Congress was unhappy with practices that had developed in certain parts of the country under Chapter 13's predecessor that had resulted in debtors remaining under court-supervised repayment plans for seven to ten years, which Congress characterized as being close to indentured servitude. [18] Clearly, these concerns inspired the plan-duration limits Congress included in §§ 1329 and 1322. As demonstrated by this case, though, the practice of allowing a plan modification that deems many months of payments to be a "lump sum contribution" that is counted as consuming at most a few months of the five-year plan limit would permit plans that in fact last much longer than five years, the outside limit Congress sought to impose. Indeed, were this lump-sum-contribution fiction a permissible construction of Chapter 13's provisions, we see nothing that would preclude applying it again and again, keeping debtors in Chapter 13 indefinitely. The Utah bankruptcy courts have exceeded their authority by following this practice.

---

**17.** Appellee's brief in BAP No. 02–045 at 4.

**18.** See H.R.Rep. No. 95–595, at 117 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6077, reprinted in Appendix C, Collier

on Bankruptcy App. Pt. 4(d)(i), at 4–1208 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev.2002).

While we have found no reported decision involving a practice like the one followed in this case, we are aware that courts have published decisions reaching two main conflicting conclusions about when "the first payment under the original confirmed plan" becomes due.[19] One conclusion, exemplified by decisions like *Baxter v. Evans (In re Evans)*,[20] is that the five-year limit on plan duration starts to run on the date the debtor's first payment came due under § 1326(a)(1). That due date is almost always thirty days after the plan was filed. The other common conclusion about the five-year period is that it does not start to run until the debtor's first plan payment comes due after the plan has been confirmed. The courts applying this view include the only circuit court to have ruled on the issue, the Fourth Circuit in *West v. Costen.*[21]

The leading expert on Chapter 13 bankruptcy practice, Judge Keith M. Lundin, sides with the *Evans* rule and rationale.[22] On the other hand, the leading treatise that attempts to cover all bankruptcy chapters, *Collier on Bankruptcy*, cites *Costen* as establishing how courts have "generally" ruled, but offers no discussion of the question.[23] Another treatise, *Norton's*, recognizes the split in authority and the lack of a clear answer in the Bankruptcy Code itself, and then sides with the *Costen* result, offering reasons not given by the Fourth Circuit for adopting it.[24]

We need not choose sides in this dispute now. It is sufficient simply to declare that the lump-sum-contribution practice followed in this case, which effectively extended the Debtor's plan beyond five years after her first payment under her original confirmed plan was due, violated § 1329(c).

The other issue Christensen raised in his initial brief in his appeal of the Plan Confirmation Order is whether the bankruptcy court improperly confirmed a plan that did not call for him to retain the lien securing his claim. Nothing in the record on appeal indicates that Christensen ever raised this issue before the bankruptcy court, so only a good reason would convince us to address it. It is true that § 1325(a)(5)(B)(i) required the plan to provide that Christensen would retain his lien. However, the Debtor's various plans and plan amendments have not been included in the record, so we cannot tell whether they violated that requirement. Both the Original and the Second Confirmation Orders provided that Christensen's claim was being treated as either fully or mostly secured and said nothing about rejecting an attempt by the Debtor to treat it otherwise, indicating a likelihood that the plans being confirmed at least did not expressly provide that Christensen would *not* retain his lien. Because Christensen has not established the factual premise underlying this issue, we decline to exercise our discretion to consider it on the merits.

**19.** *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 256.1 (3d ed.2002) (citing and discussing many cases on this point).

**20.** 183 B.R. 331, 332–34 (Bankr.S.D.Ga. 1995).

**21.** 826 F.2d 1376, 1378 (4th Cir.1987).

**22.** 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 256.1 (3d ed.2002) (quoting *Evans* rationale at 256–4 to –5).

**23.** 8 *Collier on Bankruptcy* ¶ 1329.07, at 1329–14 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev.2002).

**24.** 5 *Norton Bankruptcy Law and Practice* § 124:2, at 124–16 to –17 (William L. Norton, Jr. ed.-in-chief, 2d ed.2001).

■ We also decline to exercise our discretion to consider the new issue Christensen raised in his reply brief in this appeal. Nothing in the record indicates that he questioned the Debtor's good faith in proposing the "lump sum contribution" to her plan, nor did he raise the question in his initial appeal brief. A debtor's good faith in proposing a plan is a matter requiring a consideration of the totality of the circumstances involved in the case.[25] Such issues are rarely, if ever, appropriate for initial determination on appeal.

**Conclusion**

In BAP No. UT–01–093, the appeal of the Second Confirmation Order, the bankruptcy court's ruling is affirmed. In BAP No. UT–02–045, the appeal of the Plan Modification Order, the bankruptcy court's ruling is reversed, and the matter is remanded for further proceedings consistent with this opinion.[26]

---

25. *In re Robinson,* 987 F.2d 665, 668 (10th Cir.1993) (per curiam); *In re Rasmussen,* 888 F.2d 703, 704 (10th Cir.1989).

26. In her brief in BAP No. UT–02–045, the Debtor has requested attorney fees and costs. We will *not exercise our discretion to award* sanctions. *See* Fed. R. Bankr.P. 8020.