**In re Michael J. SAVAGE and Amber J. Savage, Debtors.**

No. 07–30873.

United States Bankruptcy Court,
D. Minnesota.

March 25, 2010.

Ronald J. Lundquist, Eagan, MN, for Debtors.

## ORDER DENYING DEBTORS' MOTION FOR POST–CONFIRMATION MODIFICATION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 13 case came on before the court for hearing on the Debtors' motion for post-confirmation modification. The Standing Trustee objected to the motion. The Debtors appeared by their attorney, Ronald J. Lundquist. The Standing Trustee appeared by her attorney, Margaret H. Culp. The following decision is based on the record made for the hearing, and the post-hearing briefing.

### PROCEDURAL HISTORY

The context for the dispute at bar is framed by various procedural aspects of this case during its earlier pendency. The content of the Debtors' confirmed plan, and of the proposed modification at bar, is the focus of the controversy.

1. The Debtors filed a voluntary petition under Chapter 13 on March 19, 2007.

2. On May 24, 2007, the court confirmed the Debtors' modified plan. In pertinent part, the plan provided that:

a. After an initial payment of $521.00, the Debtors were to pay the Standing Trustee $574.00 per month for a period of 59 months commencing in May, 2007, for a total of $33,866.00.

b. The "minimum plan length" was to be 60 months, "from the date of the initial plan payment unless all allowed claims [were] paid in full."

c. After payment of the allowed fees of the Debtors' attorney and the Standing Trustee's compensation, creditors holding allowed unsecured claims were to receive their pro rata share of $30,637.00. The Debtors estimated that the total of unsecured claims was $65,321.00.

3. On April 2, 2009, the Standing Trustee filed a motion for dismissal of this case. The cited cause for dismissal was the Debtors' default in plan payments, in the amount of $1,148.00 as of April 2, 2009.

4. The Debtors' response to the Standing Trustee's motion was the motion at bar.

5. The Debtors stated that they were proposing the modification due to "changes in income and expenses," as well as a reduction in child support payments to be received by Amber Savage. The only proof for the alleged change in income and expenses was specimen copies of amended Schedules I and J, not separately verified. The proof for the alleged reduction in child support received was a conformed copy of an order from the Family Division of the Hennepin County District Court.

6. In pertinent part, the Debtors' second modified plan provided that:

a. The Debtors had already paid the Standing Trustee a total of $13,194.00.

b. After the date of the plan [given as April 20, 2009 in its verification], the Debtors were to pay the Standing

Trustee $224.00 per month for a period of 18 months commencing in April, 2009, for a total of $4,032.00 in that increment.

c. There was no provision for a "minimum plan length."

d. After payment of the allowed fees of the Debtors' attorney and the Standing Trustee's compensation, creditors holding allowed unsecured claims were to receive their pro rata share of $14,504.00. The stated amount of attorney fees had not changed from that recited in the confirmed plan; neither had the total of unsecured claims.

7. The Standing Trustee then filed an objection to the Debtor's motion for modification.

## DISCUSSION

The effect of the Debtors' proposed modification, if approved, would be twofold. First, *de facto*, by reducing the Debtors' aggregate obligation of payment under the plan, it would significantly lessen the composition-distribution to their unsecured creditors. Second, *de jure*, it would reduce the period of time over which the Debtors were bound to a payment obligation as a condition of discharge— from the total of 60 months for which the confirmed plan provides, to a total of 43 months.

These potential consequences have significance because this case was commenced by "above-median debtors." This phrase is part of the shorthand-jargon that has evolved among consumer bankruptcy attorneys since the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8. It signifies individual debtors whose "current monthly income," as defined by 11 U.S.C. § 101(10A), is above "the highest median family income of the applicable State," i.e., their state of residence. 11 U.S.C. § 1325(b)(3); *In re Frederickson*, 545 F.3d 652, 654 (8th Cir.2008); *In re Lasowski*, 384 B.R. 205, 208 (8th Cir. BAP 2008).

Acknowledging this status, the Debtors took a prophylactic measure against an objection to confirmation of their plan; they structured it to have all of their projected disposable income applied to make payments to unsecured creditors for the statutorily-prescribed "applicable commitment period." 11 U.S.C. § 1325(b)(1)(B). For them, the length of the "applicable commitment period" was "not less than 5 years," in light of their above-median status. 11 U.S.C. § 1325(b)(4)(A)(ii). Once confirmed, this plan established what they had to do by way of payment on creditors' claims, to remain under the protection of the court pending a grant of discharge under Chapter 13.

Now, however, the Debtors propose to reduce the amount of their monthly payment to the Trustee that would be applied to unsecured claims. They also propose to significantly reduce the duration of time for which they would have to make that payment. These changes were embodied in a modification of their plan pursuant to 11 U.S.C. § 1329(a), for which "notice and a hearing" were afforded as required by 11 U.S.C. § 1329(b)(2). The Standing Trustee objected, seeking to have the modification disapproved.

The threshold question posed by the Trustee's objection may be stated as follows: Is it legally open to a Chapter 13 debtor to reduce the duration of a plan below the applicable commitment period prescribed by § 1325(b)(1)(B) at the commencement of the case, by invoking 11 U.S.C. § 1329(a)(2) to propose a modification?

The question really does present a conundrum, which is created by the coincidence of two aspects of Chapter 13 in the wake of BAPCPA's enactment.

On the one hand, the text of several pertinent amendments in BAPCPA is a patent display of a more generalized legislative intent, "to require above-median income debtors [in Chapter 13 cases] to make more funds available to unsecured creditors." *In re Lasowski*, 384 B.R. at 212. *See also In re Frederickson*, 545 F.3d at 658; *In re Wilson*, 383 B.R. 729, 733 (8th Cir. BAP 2008).

But, if Congress's intent was to prescribe that for the full duration of a case after a post-confirmation modification of plan, there is the persisting, undeniable interstice in the statutory requirements for modification, post-BAPCPA. Under § 1329(b)(1), a debtor must conform a proposed modification to several of the statutory requirements for the initial confirmation of a plan, per explicit cross-references to §§ 1322(a), 1322(b), and 1325(a); but there is no reference in § 1329(b)(1) to § 1325(b) and its "best efforts" test. Further complicating the picture is the post-BAPCPA reference in 11 U.S.C. § 1329(c) to the "applicable commitment period." Section 1329(c) caps the duration of a modified plan, and now it prohibits the extension of post-modification payments beyond the end of the applicable commitment period for the case.[1]

Reasonable minds can differ, as to how to harmonize the seeming conflict in this current, incomplete statutory governance; and they have differed on the trial court level. *Compare In re White*, 411 B.R. 268, 272–273 (Bankr.W.D.N.C.2008); *In re McCully*, 398 B.R. 590, 592–594 (Bankr. N.D.Ohio 2008); *In re Kidd*, 374 B.R. 277, 282 (Bankr.D.Kan.2007); and *In re Ewers*, 366 B.R. 139, 141–142 (Bankr.D.Nev.2007) (all holding, in substance, that facial absence from § 1329(b)(1) of any reference to § 1325(b) is conclusive as to whether debtor may modify plan to reduce duration of payment obligation below applicable commitment period required for original plan; and all holding that debtor may modify to reduce duration); *with In re Heyward*, 386 B.R. 919, 924–926 (Bankr. S.D.Ga.2008); *In re Slusher*, 359 B.R. 290, 301 (Bankr.D.Nev.2007); and *In re Baxter*, 374 B.R. 292, 296 (Bankr.M.D.Ala.2007) (all holding that BAPCPA's imposition of "applicable commitment period" persists for full duration of case; all holding that debtor may not modify to reduce duration below applicable commitment period fixed at beginning of case). Thus far, there is no significant post-BAPCPA development of the issue on the appellate level, in the Eighth Circuit or elsewhere.[2]

1. This new reference has direct substantive significance; it does not function just as an exclusion. As such, against the looming presence of the broader substantive changes under BAPCPA, it vitiates the rationale announced by the panel that issued *In re Forbes*, 215 B.R. 183 (8th Cir. BAP 1997).

2. The Standing Trustee relies heavily on the holding in *In re Frederickson*, 545 F.3d at 657, that the "applicable commitment period" under § 1325(b)(1)(B) is a "temporal requirement" mandating a specific duration for a plan. But, *Frederickson* arose out of an initial confirmation proceeding in a Chapter 13 case, not a motion for post-confirmation modification, and hence it did not entail the statutory application that is at bar. *Frederickson's* pronouncements about congressional intent have to be the final word for any trial court, within the circuit; but they cannot be generalized and stretched over to a procedural context that is governed by a different statute in the first instance. And, under *Frederickson's* own articulation, its casting of the applicable commitment period solely in terms of a temporal character is not foreordained, for every last application in a Chapter 13 case. The Eighth Circuit took pains to state that its holding and characterization did not even address every possible fact pattern in the initial

But, for the case at bar and on the record at bar, one need not go there. There is another threshold issue, at a more immediate level, and its outcome cannot be favorable to the Debtors.

■■■ It has long been recognized in this district that the proponent of a modification of a plan in a Chapter 13 case must demonstrate some form of "cause" for the modification, in anticipation of objection from parties that would be adversely affected by the approval and administration of the modification. *In re Guernsey*, 189 B.R. 477, 481–482 (Bankr.D.Minn.1995). Any modification that would reduce a debtor's payment obligations and creditors' distribution rights must be supported by a material, adverse change in the debtor's financial circumstances, that took place after the confirmation of the original plan. *In re Nelson*, 189 B.R. 748, 751 (Bankr. D.Minn.1995). *See also, in general, In re Debing*, 202 B.R. 291, 293 (Bankr.D.Minn. 1996).

■■■ Of necessity, the required change in financial circumstances should be directly resonant with the nature of the proposed modification.[3] Given the structure of the "best efforts" requirement of § 1325(b), the original confirmed plan is deemed to reflect the outside boundaries of the debtor's most stable and predictable financial means. So, the stated reduction in a debtor's ability to make payment should, *de facto*, be of a sort to prevent him from following through with the established commitments under his confirmed plan, which otherwise would be binding for so long as he would be in Chapter 13.

■■■ Before BAPCPA, any deeming of payment ability to a debtor for the purposes of the "best efforts" test was essentially *de facto* in nature, based on the debtor's actual patterns of consumption versus reasonable needs; its scope did not extend beyond a 36–month term. *See* 11 U.S.C. § 1325(b)(1)(B) (2005) (requiring plan to "provide[ ] that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan"). After BAPCPA, and especially for above-median debtors, it is more a *de jure* process under which the floor of a payment obligation is dictated, on the basis of an assumed—and in some sense *presumed*—income surplus in a material amount over a specified time. 11 U.S.C. §§ 1325(b)(1)(B) and 1325(b)(3) (2006) (the former now dictating application of all disposable income for the cases's "applicable commitment period," not necessarily limited to three years; and the latter prescribing, for above-median debtors, the nature and deemed amount of household and personal maintenance expenses to be factored into the calculation of the debtor's "disposable income," by reference to standards and guidelines externally fixed by the Internal Revenue Service and largely regardless of the debtor's own actual experience and needs). These provisions align with one of BAPCPA's self-evident goals, to reduce the leeway of debtors to argue their individual circumstances on various issues, and to reduce the discretion of bankruptcy judges to consider such circumstances in structuring and according relief. *E.g., In re Ellringer*, 370 B.R. 905, 910 (Bankr.D.Minn.

---

confirmation context. 545 F.3d at 660 n. 6 (noting that holding "does not address the situation in which a debtor has no actual 'projected disposable income'" as contemplated by BAPCPA).

**3.** This is unquestionably implicated by the "good faith" requirement of 11 U.S.C. § 1325(a)(3), which is made applicable to modification of a plan by § 1329(b)(1).

2007). So, even more strongly post-BAPCPA than before, to merit approval of a proposed modification, the characteristics of the changed circumstances must extend to the boundaries of the payment obligations established by the original, confirmed plan, including the mandated duration of the applicable commitment period.

These abstractions translate to this case as follows.

■ When the Debtors commenced this case, an applicable commitment period of 60 months was imposed on them by their above-median status. At present, they still have above-median household income, even assuming the modest reductions in net earnings that they allege.[4]

There is plenty of parallel, persuasive authority for the proposition that an individual debtor's status under the post-BAPCPA legal regime, in any context where it is fixed by a determination of "current monthly income" as defined by 11 U.S.C. § 101(10A), cannot change post-petition, regardless of ensuing factual developments. *E.g., In re Ellringer,* 370 B.R. at 910 ("means test" of 11 U.S.C. § 707(b)(2)(A), based as it is on "current monthly income," "is not meant to be continually updated as debtors' circumstances change"). But even if a debtor could be reclassified in status, one must still have

underlying facts, as changed, to meet the legal requirements for the different status. The Debtors do not have those facts.[5]

And, in any event, the Debtors have not articulated any way in which their reduced ability to pay, on a separate and incremental monthly basis, coordinates with the specific reduction in duration that they proposed. Put more bluntly, they do not recite any facts to the effect that they will lose their ability to make a payment to the Trustee, in the reduced monthly amount they propose for now, after month 43 as calculated under their original plan. The unavoidable correlate is that they will still have that ability; and since their continuing above-median status deprives them of any argument that the longer applicable commitment period lapsed due to a change in this legal status, they have neither a factual nor a legal basis to reduce their temporal obligation of payment below 60 months. Because they are relying on "a totally unrelated change in circumstances" as the platform for reducing the duration of their plan, they are not acting in good faith in proposing the modification. As such, they fail the requirement of 11 U.S.C. § 1325(a)(3), which is incorporated by § 1329(b), and their motion must be denied. *See In re Clevenger,* 2009 WL 3645325 (Bankr.W.D.Mo.2009).[6]

4. As the Standing Trustee noted in post-hearing briefing, the Debtors' monthly average *gross* income was reduced post-confirmation by approximately 8%, or $433.00 in raw dollars, per the Debtors' own submissions. The Standing Trustee herself pointed to a drop in gross income of $274.00 per month, as between 2006 and 2007, based on the Debtors' tax returns. She presents no such analysis for subsequent tax years.

5. In some sense, this conclusion veers toward the reasoning of *In re Baxter,* 374 B.R. at 296, that the exception for § 1325(b) contained in the first phrase of § 1325(a) "has the effect of capturing both subsections making the disposable income requirement of § 1325(b) ap-

plicable to modified plans." At the very least, *Baxter's* rationale reinforces the conclusion here.

6. This disposition does not reach the Debtors' proposal to reduce the *amount* of their monthly payment obligation. It was not entirely clear whether the Standing Trustee was raising that issue in her original objection; but in her post-hearing brief her counsel did include some detailed analysis going to the changes in income and expenditures that the Debtors had proffered in support of that aspect of the proposed modification. If there is an issue, it can be taken up on a second modified plan.

IT IS THEREFORE ORDERED:

1. The Debtors' modified plan is not approved.

2. No later than *April 15, 2010*, the Debtors shall make a motion for approval of a second modified plan, structured in conformity with the rulings in this order.