**In re Scott T. ZELLMER, Debtor.**

**No. 10–30349.**

United States Bankruptcy Court, D. Minnesota.

Feb. 23, 2012.

Jeffrey M. Bruzek, Bruzek Law Office, St. Paul, MN, for Debtor.

## ORDER DENYING PLAN MODIFICATION

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came before the Court on the Chapter 13 Trustee's motion to dismiss

or convert for failure of the debtor to make payments due as required by the confirmed plan in the case. The debtor countered with a motion to confirm a proposed modified plan, to which the Trustee objects. Margaret H. Culp appeared on behalf of the Chapter 13 Trustee, Jasmine Z. Keller. Jeffrey M. Bruzek appeared on behalf of the debtor, Scott T. Zellmer. At the conclusion of the hearing, the Court allowed the parties time to submit additional briefs on the central issue, and thereafter took the matter under advisement. Being now fully advised, the Court makes this Order pursuant to the Federal and Local Rules of Bankruptcy Procedure.

## I. FACTS

The facts in this case are uncomplicated and not disputed. Scott Zellmer filed for Chapter 13 protection on January 20, 2010, as a married debtor, filing individually. Included in his income available for plan payments was his non-filing spouse's income. Zellmer's disposable income at the time of filing was less than the median income for a family of three in Minnesota. As a below median debtor, Zellmer properly filed and obtained confirmation of a Chapter 13 plan with a term of repayment of 36 months.

Post-confirmation, Zellmer failed to make plan payments for March through June 2011, due to garnishment of his non-filing spouse's income and increased expenses. To remedy the situation and restore his continuing viability for relief under Chapter 13, Zellmer proposes a modified plan with a reduced monthly payment (from $716 to $500). However, the plan does not provide for payments missed during the default months and amounts to a final total of only 31 plan payments.

The Trustee does not object to the additional expenses or to the reduced monthly plan payment, but she objects to confirmation of the proposed modified plan because it does not provide creditors with a total of 36 monthly payments. It is the trustee's position that the debtor must make at least 36 payments, not simply remain in Chapter 13 for 36 months, without regard for missed payments during the pendency of a 36–month plan. Zellmer argues that the Code does not permit a post-modification plan to exceed the original 36–months since the passage of time since the month that the first plan payment was due, and that the total number of payments is not controlling. For the reasons set forth below, the Court agrees with the Trustee, and, accordingly, confirmation of the modified plan as presently proposed must be denied.

## II. DISCUSSION

"A confirmed plan acts as a binding contract and an order of the bankruptcy court." *See In re Jenkins*, 428 B.R. 845, 849 (8th Cir. BAP 2010), citing *In re Dial Bus. Forms, Inc.*, 341 F.3d 738, 744 (8th Cir.2003). "At any time, there exists only one plan." *Jenkins*, 428 B.R. at 849. "When a plan modification is approved, '[t]he plan as modified becomes the plan.'" *Id.*, citing § 1329(b)(2), *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183, 188 (8th Cir. BAP 1997) ("the plan is a unitary constant"). "The provisions of a confirmed plan bind the debtor and each creditor." *Jenkins*, 428 B.R. at 849, citing 11 U.S.C. § 1327(a).

Section 1325(a)(1) requires that a plan must comply with the provisions of Chapter 13 and other applicable provisions of Title 11. Section 1325(b)(1) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan un-

less, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income *to be received in the applicable commitment period beginning on the date that the first payment is due under the plan* will be applied to make payments to unsecured creditors under the plan.

*See* 11 U.S.C. § 1325(b)(1) (2010) (emphasis added).

The language in § 1325(b)(1)(B) connecting the duration of the plan (the applicable commitment period) with the due date of the first payment arguably suggests that the number of payments is the core, defining element of plan length. A plan life of thirty-six months creates a schedule for thirty-six payments. The minimum term of a plan and the number of plan payments are the same number. In every Chapter 13 plan, the length of the plan, or the applicable commitment period, is typically defined by the same number of payments. Therefore, as a practical matter, the basic structure in a Chapter 13 plan is a number of payments to be made in as many months.[1]

The confusion here arises from the following language in § 1329, which provides in pertinent part:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; [ ... ]

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section *may not provide for payments over a period that expires after the applicable commitment period* under section 1325(b)(1)(B) *after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period,* but the court may not approve a period that expires after five years after such time.

*See* 11 U.S.C. § 1329 (2005) (emphasis added).

The Court acknowledges the difficulty with § 1329(c). The language is not entirely clear, and the interpretations of it are not entirely consistent. Nevertheless, it makes more sense in terms of fundamental fairness, the interest in the binding strength of a confirmed plan, and the requirements of good faith underlying the Chapter 13 process, to understand the applicable commitment period as being in general necessarily equivalent to that certain number of expected actual payments of disposable income, not including months of nonpayment.

---

1. Even if the section did not include "beginning on the date that the first payment is due," the "applicable commitment period" is still inherently based upon a number of payments of disposable income as calculated at the beginning of the Chapter 13 process, not upon the length of an open Chapter 13 case.

To conclude otherwise may create an opportunity, as in this case, for a "meltdown" of the percentage distribution ultimately paid to unsecured creditors reduced from the greater amount initially contemplated by the original confirmed plan based upon a certain number of monthly payments of projected disposable income. In this case, Zellmer's proposed modified plan provides 31 payments instead of 36 payments as contemplated by the applicable commitment period of 36 months, without cause.

An interesting case out of Utah involved some bankruptcy courts allowing, in post-confirmation modification settings, all payments made up to that time under the original confirmed plan to be deemed one single first payment, thereby allowing the modified plan to essentially start counting the payments going forward all over again and extending the repayment term in some cases years beyond the maximum sixty month commitment period. *See In re Black*, 292 B.R. 693, 699–701 (10th Cir. BAP 2003). The BAP, without deciding when exactly the "five-year limit on plan duration" starts to run, the date the first payment was due following filing or the first date the payment is due following confirmation, held that in any event the "lump-sum-contribution fiction" constituted a violation of § 1329(c). *Id.* at 701.

"The legislative history of the Bankruptcy Code indicates that Congress was unhappy with practices that had developed in certain parts of the country under Chapter 13's predecessor that had resulted in debtors remaining under court-supervised repayment plans for seven to ten years, which Congress characterized as being close to indentured servitude." *Black*, 292 B.R. at 700, citing H.R.Rep. No. 95–595, at

117 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5963, 6077, reprinted in Appendix C, Collier on Bankruptcy App. Pt. 4(d)(i), at 4–1208 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2002). "Clearly, these concerns inspired the plan-duration limits Congress included in §§ 1329 and 1322." *Black*, 292 B.R. at 700.

Section 1329(c) "clearly demonstrate[s] that Congress intended to limit to five years the total length of time that debtors can *pay* into Chapter 13 plans." *Black*, 292 B.R. at 699 (emphasis added). Understanding the plan duration limits as based on a number of plan payments and not simply total months of an active Chapter 13 case does not offend the policy of protecting debtors from an enslaving Chapter 13 process of indefinite length; but it does not count months in which payments are not made, unless cause would require otherwise.[2] Moreover, this conclusion is consistent with the Supreme Court's rejection of the mechanical approach to determining projected disposable income under § 1325 in favor of a forward-looking approach based upon the number of months in a debtor's applicable commitment period. *See Hamilton v. Lanning*, —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010).

In the Eighth Circuit, "applicable commitment period" is understood to be a "temporal" requirement when the debtor has actual projected disposable income:

[T]he "applicable commitment period" is logically a temporal requirement that does not lead to anomalous or absurd results. [FN6] *See [In re] Nance*, 371 B.R. [358] at 370 [ (Bankr.S.D.Ill.2007) ] (citing H.R.Rep. No. 109–31, pt. I (2005), as reprinted in 2005 U.S.C.C.A.N. p. 88,

**2.** *But see, In re Howell*, 76 B.R. 793 (Bankr. D.Or.1986) (post-confirmation allowed even though, due to default in payments under original plan, amended plan would result in debtor making fewer than 36 payments).

146, for the proposition that Congress intended the "applicable commitment period" to provide a certain duration length to Chapter 13 plans and noting that there is no evidence that Congress intended to change the minimum plan length requirement in the pre-BAPCPA version of 11 U.S.C. § 1325(b)(1)(B)); [*In re*] *Slusher*, 359 B.R. [290] at 301 [ (Bankr.D.Nev.2007) ] (defining the terms "applicable," "commitment," and "period," and concluding that the phrase "applicable commitment period" indicates a minimum plan length); [*In re*] *Casey*, 356 B.R. [519] at 527–28 [ (Bankr.E.D.Wash.2006) ] (applying the "applicable commitment period" as a temporal requirement); *In re Schanuth*, 342 B.R. 601, 606–08 (Bankr.W.D.Mo. 2006) ("applicable commitment period" is a temporal requirement which must be satisfied unless the plan provides for payment in full of all allowed unsecured claims).

*See In re Frederickson*, 545 F.3d 652, 660 (8th Cir.2008).

To allow Zellmer to confirm the amended plan as proposed presents the same problem occasioned by debtors who would, post-confirmation, seek to "pay off" their Chapter 13 plans with proceeds realized post-confirmation as a result typically of an exempt asset. It would allow evasion of the minimum plan length mandated by the statutory applicable commitment period. "Congress specifically addressed the issue of early pay outs in § 1325(b)(4)(B) by expressly conditioning shorter plans on full repayment of all unsecured claims during

that shorter time period." *See In re Kidd*, 374 B.R. 277, 281 (Bankr.D.Kan.2007). "By its very terms ... § 1325(b) does not allow a debtor to propose a plan that will allow the debtor to pay off a plan early, and receive a discharge before the expiration of the applicable commitment period, unless all unsecured claims are paid in full." *Id.*

■ "[T]he 'applicable commitment period' clearly defined by Congress in § 1325(b)(4)(A) is a temporal yard stick for Chapter 13 plans." *Id.* "It does not provide that a finite dollar amount must be paid to creditors and then, once that amount is paid, debtors can complete their Chapter 13 plans and receive their discharge." *Id.* "Instead, it clearly provides the time period over which *payments must be made.*" *Id.* (emphasis added).[3] For Zellmer, the time period over which payments must be made is thirty-six months. The months during which the case was active but payments were not made do not run against the applicable commitment period.

■ The operative question, therefore, is cause. "It has long been recognized in this district that the proponent of a modification of a plan in a Chapter 13 case must demonstrate some form of 'cause' for the modification, in anticipation of objection from parties that would be adversely affected by the approval and administration of the modification." *See In re Savage*, 426 B.R. 320, 324 (Bankr. D.Minn.2010), citing *In re Guernsey*, 189 B.R. 477, 481–482 (Bankr.D.Minn.1995).

---

3. But see, *Kidd*, 374 B.R. at 282, citing *In re Ewers*, 366 B.R. 139, 143–144 (Bankr.D.Nev. 2007): Section 1329 "does not prohibit a modified plan from providing for payment over a shorter period of time. Therefore, debtors are not precluded from seeking a good faith modification of a confirmed plan to shorten the amount of time the plan must run, provided they file a proper motion, under § 1329, showing that there has been a sufficient change in circumstances to warrant such a modification of the plan, and that the modification is filed in good faith." In this case, there is no cause for Zellmer to avoid making a full 36 payments pursuant to the applicable commitment period.

"Any modification that would reduce a debtor's payment obligations and creditors' distribution rights must be supported by a material, adverse change in the debtor's financial circumstances, that took place after the confirmation of the original plan." *Savage*, 426 B.R. at 324, citing *In re Nelson*, 189 B.R. 748, 751 (Bankr.D.Minn. 1995); *In re Debing*, 202 B.R. 291, 293 (Bankr.D.Minn.1996).

■ "Of necessity, the required change in financial circumstances should be directly resonant with the nature of the proposed modification." *Savage*, 426 B.R. at 324, noting the "good faith" requirement of 11 U.S.C. § 1325(a)(3) made applicable to modification of a plan by § 1329(b)(1). "[T]he original confirmed plan is deemed to reflect the outside boundaries of the debtor's most stable and predictable financial means." *Savage*, 426 B.R. at 324. "[A] reduction in a debtor's ability to make payment should, de facto, be of a sort to prevent him from following through with the established commitments under his confirmed plan, which otherwise would be binding for so long as he would be in Chapter 13." *Id.*

■ "Maintaining the integrity of confirmed plans is an important part of the Chapter 13 process." *Guernsey*, 189 B.R. at 482. "[E]ven more strongly post-BAPCPA than before, to merit approval of a proposed modification, the characteristics of the changed circumstances must extend to the boundaries of the payment obligations established by the original, confirmed plan, including the mandated duration of the applicable commitment period." *Savage*, 426 B.R. at 324. *See also In re Grutsch*, 453 B.R. 420, 427–428 (Bankr.D.Kansas 2011) (length of Chapter 13 plan is res judicata upon confirmation, subject to change only upon a significant change in circumstances of the debtor, and there was no evidence that the debtor would be unable to continue making the modified reduced payments for the full length of the original plan).

■ "[U]nder § 1329(b), a modified plan must still meet, inter alia, § 1325(a)(3)'s good faith test." *See In re Clevenger*, 430 B.R. 539, 542 (Bankr. W.D.Mo.2009) (citations omitted). "In the Eighth Circuit, 'good faith' analysis under § 1325(a)(3) is focused on 'whether the plan constitutes an abuse of the provisions, purpose or spirit of Chapter 13.'" *Id.* at 543. "This requires looking to the totality of the circumstances to discern whether good faith exists." *Id.* "Following the enactment of § 1325(b), the Eighth Circuit concluded that [§ 1325(b)] ... narrowed the focus to one which depends on 'whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent representation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.'" *Id.*

■ "[I]t is contrary to the spirit of Chapter 13 to permit [debtors] to seize upon a ... change in circumstances to avoid § 1325(b)'s applicable commitment period, particularly given 'the clear congressional intent of BAPCPA, which was enacted to ensure that debtors repay creditors the maximum they can afford.'" *Id.* (citations omitted). "A sincere effort to repay creditors is a hallmark of good faith, which is a requirement of plan modification by virtue of the incorporation of § 1325(a)(3) into § 1329." *Id.*, citing *In re Gengenbach*, 2008 WL 1767061 (Bankr. D.Neb.2008).

By his own admission, Zellmer has not suffered an ongoing substantial change in circumstances that precludes completion of the applicable commitment period of thirty-six months of payments. Indeed, the proposed plan is based upon his actual

available projected disposable income, based upon the adjusted expenses resulting from a reasonable and unavoidable change of circumstances, to support the proposed reduced plan payments, to which the Trustee does not object.

■ But, the plan proposes to limit total payments to thirty-one months, thereby melting down the overall final percentage distribution to unsecured creditors. Proposing a meltdown post-confirmation modified plan, and exacerbating the decreased distribution by reducing the total number of plan payments to less than the original applicable commitment term, without cause, is an attempt to unfairly manipulate the provisions of the Bankruptcy Code.

■ While Zellmer has documented an unanticipated substantial change in circumstances affecting his ability to proceed with payments as required under the terms of the original Chapter 13 plan, that does not warrant a reduction in the plan's duration. There is no cause why Zellmer cannot cure the default of the applicable commitment period by extending the post-confirmation modified plan by five additional months. While the reduction in the amount of each plan payment is reasonable, Zellmer's good faith is called into question by his willingness to enjoy the benefits of Chapter 13 without contributing his projected disposable income by making the full thirty-six payments of the commitment term.

### III. DISPOSITION

IT IS HEREBY ORDERED:

1. The Chapter 13 Trustee's objection to confirmation is SUSTAINED;

2. Confirmation of the debtor's proposed modified plan identified as "1st Post–Confirmation Chapter 13 Plan" filed on July 14, 2011, docket entry 26, is DENIED; and

3. The Chapter 13 Trustee's motion to dismiss or convert shall be continued to the March 2012 confirmation calendar to allow the debtor an opportunity to file a confirmable second amended post-confirmation proposed Chapter 13 plan.