**In re Ernest Robert and Rose Ann IRELAND, Debtors.**

**No. 6:06–bk–70571M.**

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

April 2, 2007.

28

Stephen Wade Parker, Dickerson Law Firm, Hot Springs, AR, for Debtors.

## *ORDER*

JAMES G. MIXON, Bankruptcy Judge.

This case is before the Court upon the Chapter 13 Trustee's objection to confirmation of a postconfirmation modified plan proposed by Ernest and Rose Ireland ("Debtors"). At issue is whether the Debtors, who have suffered a substantial reduction in income since the filing of their bankruptcy petition, are prohibited by the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") from modifying their Chapter 13 plan to reduce payments to unsecured creditors.

On April 4, 2006, the Debtors filed a voluntary petition for relief and proposed a repayment plan under the provisions of Chapter 13 of the United States Bankruptcy Code. The Debtors filed amended plans on June 6, 2006, and June 26, 2006, each of which drew objections, and neither plan was confirmed. Neither the Trustee nor any party in interest objected to the third amended plan filed August 18, 2006, and it

was confirmed by order entered September 13, 2006. The Debtors proposed a fourth amended plan on September 20, 2006 ("Fourth Modified Plan"). On September 28, 2006, the Chapter 13 Trustee objected to confirmation of the Fourth Modified Plan and amended the objection on October 10, 2006.

A hearing on the Trustee's amended objection was held in Hot Springs, Arkansas, on December 7, 2007, and the parties agreed to submit the matter upon written stipulated facts, exhibits, and briefs. The matter was taken under advisement pending receipt and review of the stipulations and briefs.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in the case.

## FACTS

In addition to the procedural facts recited above, the following facts are relevant to a determination of the issue before the Court. Filed April 4, 2006 with the bankruptcy petition, the Debtors' original Schedule I reflects a combined net monthly income of $4559.88 after deductions for taxes, insurance, and social security. Schedule I states that Mr. Ireland is employed as a truck driver for Pat Salmon and Sons, Incorporated and that Mrs. Ireland is a cashier at McClard's Restaurant in Hot Springs National Park, Arkansas.

On Form B22C, also filed April 4, 2006, the Debtors reported a combined annual gross income of $66,499.04, which is above the median income of $38,438.00 for a family of two in Arkansas. Therefore, the Debtors were required by the provisions of section 1325(b)(3) of the Bankruptcy Code to compute disposable monthly income by using the means test provided for in section 707(b)(2) of Title 11.[1]

---

1. This requirement is not applicable unless    the trustee or an unsecured creditor objects.

The Debtors made all Form B22C calculations to arrive at the sum of $1014.96 designated as monthly disposable income to be paid to unsecured creditors. The plan confirmed on September 13, 2006, provided for a plan payment of $1640.00 for 60 months, a sum that would pay the claims of unsecured creditors in full. The scheduled general unsecured creditors' claims total $32,039.00, and the scheduled unsecured priority claims total $2114.00. The plan also proposed to pay the secured claims of CenterOne, Chase Auto Financial, and Ashley Furniture Company, as well as attorney's fees and administrative costs.

On September 20, 2006, the Debtors filed an amended Schedule I that evidenced a net monthly income reduced from $4559.88 to $3710.89, an $848.99 reduction in net monthly income resulting from Mr. Ireland's job change two months previously. Comparing the original Schedule I with the amended Schedule I shows a substantial decrease in gross monthly income of $1295.44.[2]

Also filed September 20, the Debtors' Fourth Modified Plan reduced the plan payment to $1000.00 per month for sixty months for a total of $60,000.00 to be paid into the plan. The plan provided that, instead of payment in full, general unsecured creditors were to receive a pro rata dividend totaling $6087.41. General unsecured claims total $32,039.00. All other provisions of the plan would remain the same, with the balance of the $60,000.00 allocated to pay secured creditors, the unsecured priority claims, and administrative claims including Trustee's fees and attorney's fees.

The Debtors calculated the proposed monthly payment in the Fourth Modified Plan by subtracting from anticipated future monthly income of $3710.89 (See Amended Schedule I) the amount of anticipated monthly expenses of $2710.00 reflected on Amended Schedule J, resulting in a monthly plan payment amount of $1000.89 (rounded down to $1000.00).

However, the Debtors' current gross income of $4247.12 per month, when multiplied by twelve, equals $50,965.44, which is still above the median family income for a family of two in Arkansas.

## ARGUMENT

In her brief, the Trustee points out that the proposed Fourth Modified Plan decreased the estimated dividends to unsecured creditors from 100% to 19%. She states that the proposed payments to unsecured creditors in the modified plan are inconsistent with the results of the means test calculation in Form B22C that dictated a 100% dividend to unsecured creditors. She contends that the Debtors are bound by the results of the calculation on Form B22C as a minimum payment to unsecured creditors regardless of any change in actual income after the Debtors filed their petition.

The Debtors argue that a modified plan allowed by Section 1329 of the Bankruptcy Code may change the dividend to unsecured creditors if warranted by the debtor's circumstances. They further state that they have complied with the provisions of Chapter 13 if they calculate projected disposable income with reference to

---

*See* 11 U.S.C. § 1325(b)(1)-(3) (2006).

**2.** Another way to view the reduction in gross income is to subtract $4247.12 in combined gross monthly income reflected on Amended Schedule I from the $5539.92 in combined

gross income reported on Form B22C on the day the petition was filed. That calculation results in a $1292.80 reduction in gross income.

Schedules I and J, as they did in their amended plan.

## DISCUSSION

The Trustee's argument with regard to correctly calculating a plan payment is based, in part, on BAPCPA amendments to the Bankruptcy Code.

Under the BAPCPA amendments, to calculate the plan payments in a Chapter 13 case the debtor must compute current monthly income. The Bankruptcy Code defines "current monthly income" to mean

the average monthly income from all sources that the debtor receives, (or in a joint case, the debtor and the debtor's spouse receive) . . . derived during the 6–month period ending on-(i) the last day of the calendar month immediately preceding the date of the commencement of the case . . . (B) . . . but excludes benefits received under the Social Security Act. . . .

11 U.S.C. § 101(10A) (2006).

If the debtor's average monthly income derived during the specified six-month period preceding bankruptcy exceeds the median income for the state in which the debtor resides, the debtor must use Form B22C (the means test) to compute the amount of monthly disposable income to be paid into the plan for the benefit of unsecured creditors. 11 U.S.C. § 1325(b)(2)(A)-(C) (2006); Fed. R. Bankr.P. 1007(b)(6). Pursuant to Form B22C and the means test, the Debtor may deduct from monthly gross income certain living expenses, some of which are actual and some of which are average or hypothetical figures. The form also permits deductions for payments on secured claims.

After all deductions have been subtracted from current monthly income, the resulting number is designated by Form B22C as "Monthly Disposable Income Under § 1325(b)(2)." Debtors above the median income multiply the calculated monthly disposable income by 60 months to arrive at the total amount to be paid under the plan for the benefit of unsecured creditors. 11 U.S.C. § 1325(b)(4)(ii)(I)-(III) (2006).

The Debtors computed their disposable income according to the formula described above for purposes of the plan that was confirmed. However, now the Debtors propose to figure disposable income for purposes of the amended plan by subtracting their actual monthly expenses detailed on Amended Schedule J from their actual—and substantially smaller—monthly net income set out on Amended Schedule I. The Debtors propose to pay the difference between actual income and actual expenses over sixty months to administrative, secured, unsecured priority, and general unsecured claimants.

The Trustee does not contend that the calculation is mathematically incorrect. Instead she argues that the Debtors' income is permanently fixed by statute as the six-month average income preceding bankruptcy that is delineated in section 101(10A). Thus, she contends that under BAPCPA the Debtors' proposed modification is impermissible because, although their actual income has decreased, they must continue to use the fixed, pre-bankruptcy figure as income in calculating disposable income to be paid to unsecured creditors.

Section 1329 of the Bankruptcy Code governs modification of any Chapter 13 plan after confirmation and is instructive on the issue before the Court. This provision provides in relevant part as follows:

(a) At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor . . . to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

. . .

(B) Sections 1322(a), 1322(b) and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

. . .

(c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(a)-(c) (2006).

Clearly, the statute allows a debtor to modify a confirmed plan to increase or reduce payments on claims of a particular class provided for by the plan. Further, the statute expressly designates those specific Code sections to be complied with in a modified plan. These include Sections 1322(a), 1322(b), 1323(c) and 1325(a) as well as the requirement of Section 1325(b)(1)(B) regarding the appropriate applicable commitment period. Section 1329 also contains a reference to Section 1329(b) as it relates to plan modification in order to purchase health insurance.

None of the above provisions are at issue in this case. Except for the reference to health insurance and the applicable commitment period, Section 1329 does not expressly designate compliance with any part of Section 1325(b) in a postconfirmation modification. Subsections 1325(b)(2) and (3),[3] which provide for how a debtor's plan payments must be computed pursuant to Form B22C and the means test, have not been expressly made applicable to plan modifications filed under Section 1329.

---

**3.** These subsections provide

(2) For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4))in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—

(A) in the case of a debtor in a household of 1 person, the median family income of the applicable state for 1 earner;

(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

In discussing the interplay between Sections 1325 and 1329, a leading treatise on bankruptcy has opined that Section 1325(b) is inapplicable to plan modifications except where expressly incorporated by Section 1329:

> [B]ecause 1325(b) is not mentioned in section 1329 except for other discrete purposes, it does not appear that section 1325(b) is directly applicable to modification under section 1329.
>
> The inapplicability of section 1325(b) to modification was clarified by several changes made in the 2005 legislation [BAPCPA]. First, section 1325(b) was amended to provide that the debtor's ability to pay is determined under that section based upon the debtor's "current monthly income." "Current monthly income" is a term added by the 2005 legislation to the definitions in section 101 and, except in certain limited circumstances, it is based on a calculation involving the debtor's income over the six months preceding the bankruptcy petition. Thus, the debtor's "current monthly income" is normally fixed at the time of the petition and does not change over the course of the case, regardless of any fluctuation of the debtor's actual income during that time. *It would be nonsensical to apply section 1325(b) to modifications and thereby require the use of [an] income figure that may differ greatly from the debtor's income at the time of the modification.*
>
> Second, the 2005 amendments added two new references to section 1325(b) to section 1329, and both were added for very limited purposes. As discussed below, the only references to section 1325(b) that were added to section 1329, in a bill that substantially amended section 1325(b), concern the purchase of health insurance by the debtor and the maximum time period over which a modified plan can extend. Thus, having had

the opportunity to provide that section 1325(b) applies in all respects to modifications, Congress chose not to do so.

8 Collier on Bankruptcy ¶ 1329.03 (Alan N. Resnick & Henry J. Sommer *et al.,* eds., 15th ed. rev.2006)(emphasis added).

The Trustee's only argument that Section 1325(b) applies to modifications is the text of Section 1325(a) that provides "(a) Except as provided in subsection (b) the Court shall confirm a plan if-(1)the plan complies with the provisions of this chapter and with the other applicable provisions of this title . . ." 11 U.S.C. 1325(a)(1) (2006). She contends that with this sentence, Section 1325(a), the provisions of which are expressly included in plan modification requirements, incorporates the provisions of Section 1325(b) as requirements for plan modification as well.

Courts are divided on the issue of whether the provisions of Section 1325(b), and specifically Section 1325(b)(2)(B), are incorporated into the requirements for postconfirmation plan modifications by the language of Section 1325(a)(1). *Forbes v. Forbes (In re Forbes),* 215 B.R. 183, (8th Cir. BAP 1997)(construing law prior to BAPCPA)(citing *In re Anderson,* 153 B.R. 527, 528 (Bankr.M.D.Tenn.1993))(opposing Section 1325(b)(2)(B) inclusion in plan modification requirements); *In re Moss,* 91 B.R. 563, 566 (Bankr.C.D.Cal. 1988)(same); *In re Guentert,* 206 B.R. 958, 963 (Bankr.W.D.Mo.1997)(in favor of including Section 1325(b)(2)(B) in plan modification requirements); *In re Jackson,* 173 B.R. 168, 171 (Bankr.E.D.Mo.1994)(same); *In re Klus,* 173 B.R. 51, 58 (Bankr.D.Conn. 1994)(same); *In re Solis,* 172 B.R. 530, 532 (Bankr.S.D.N.Y.1994)(same). See also *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 774–781 (9th Cir. BAP 2005)(gathering cases on the issue of whether disposable income test of section

1325(b) applies to plan modifications and holding that "[t]he incorporation of § 1325(a) is not ... the functional equivalent of an indirect incorporation of § 1325(b)").

In affirming the Bankruptcy Court, the Bankruptcy Appellate Panel for the Eighth Circuit Court of Appeals has concluded that section 1325(b)(1)(B) "is not a factor to be considered by a court in approving postconfirmation modifications." *In re Forbes*, 215 B.R. at 192. In reaching this conclusion, the Panel noted the facial omission of section 1325(b)(1)(B) from section 1329 and declined to apply section 1325(b)(1)(B) based on the theory of an inadvertent omission by Congress. *Id.* at 191. Moreover, the Panel recognized that in the case before it, application of section 1325(b)(1)(B) would lead to an absurd result. *Id.* at 191.

*In re Forbes* was decided prior to the BAPCPA amendments creating the concept of "current monthly income" and a new method for above-median income debtors to compute disposable income pursuant to subsections 1325(b)(1)-(3). However, the language upon which the Trustee relies in 1325(a)(1) was not changed by BAPCPA. Therefore, the outcomes would arguably be the same in *In re Forbes* and other pre-BAPCPA cases opposing the incorporation of Section 1325(b) provisions into the requirements for confirmation of modified plans.

Section 1329(a)(1) contemplates modified plans based on changed circumstances that may increase or decrease payments to unsecured creditors. As the Court has had occasion to observe,

> To avoid the preclusive effect of the principle of res judicata, the modification should be necessitated by an unanticipated substantial change in circumstances affecting the debtors' ability to pay. *In re Guernsey*, 189 B.R. 477, 480

(Bankr.D.Minn.1995); *In re Rimmer*, 143 B.R. 871, 873 (Bankr.W.D.Tenn. 1992); 8 Collier on Bankruptcy ¶ 1329.03 (Lawrence W. King, 15th ed. rev.1991). *In re Dunlap*, 215 B.R. 867, 869 (Bankr. E.D.Ark.1997).

The Trustee does not challenge the genuineness of the Debtors' alleged change in circumstances prompting the amended plan. Yet the Trustee maintains the position that the provisions of Section 1325(b), even when applied to a modified plan, do not permit a change in the monthly income calculations because "current monthly income" is permanently fixed as defined by Section 101(10A) of the Bankruptcy Code.

Even if the Trustee were correct that Section 1325(b) is applicable to modifications, employing the fixed concept of "current monthly income" to calculate disposable income leads to an absurd result in this case. The Trustee urges the Court to find that the Debtors, having suffered substantial loss of income, are precluded from modifying their payments to unsecured creditors as specifically allowed by Section 1329(a)(1) because they must calculate disposable income using an income figure that is now indisputably inaccurate.

The United States Supreme Court has made it clear that a disposition under a particular statute should not lead to an absurd result. *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)(Scalia, J.)(interpreting Section 506(c) of the Bankruptcy Code and stating that courts must enforce statutes when the language is plain and the disposition is not absurd)(quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)(quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). See also *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 346, 118 S.Ct. 789, 139

L.Ed.2d 773 (1998) (O'Connor, J.)(choosing a "sensible construction" of law that avoids "absurd conclusion") (quoting *U.S. v. Granderson*, 511 U.S. 39, 56, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994)).

Absent a clear statutory command that 1325(b) applies to modifications under 11 U.S.C. § 1329, the Court is not inclined to adopt a tortured view of this statute in order to reach an absurd result. There is no indication that with the enactment of BAPCPA, Congress intended to repeal, by implication, the provisions of 11 U.S.C. § 1329 that give the Bankruptcy Court flexibility to deal with changed circumstances after a plan has been confirmed. Therefore, the only method left to determine disposable income/projected disposable income in a modified plan filed pursuant to 11 U.S.C. § 1329 is to compare Schedules I and J.

Therefore, for the reasons stated, the objection to confirmation of the modified plan is overruled.

IT IS SO ORDERED.