In re Kenny E. WHITE and Donna K. White, Debtors.

No. 6:06–bk–71787.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Nov. 6, 2012.

John Howard, for the Debtors.

David Kaufman, for ADF.

Jack W. Gooding, Texarkana, TX, Chapter 13 Standing Trustee.

### ORDER SUSTAINING OBJECTION TO CLAIM, SUSTAINING OBJECTION TO SECOND MODIFICATION, AND DENYING MOTION FOR RELEASE

RICHARD D. TAYLOR, Bankruptcy Judge.

On August 18, 2011, Kenny and Donna White, the debtors ("debtors"), filed a proposed *Modification of Chapter 13 Plan* ("Second Modification"). On the same date, the debtors filed a complementary *Motion for Order of Release of Lien of the Creditor, Arkansas Department of Finance & Administration* ("Motion for Release"). On August 19, 2011, the debtors filed a proof of claim ("Involuntary Claim") on behalf of the Arkansas Department of Finance and Administration ("ADF").

ADF filed an *Objection to Modification of Plan (DE # 126)* ("Objection"). Additionally, ADF filed an *Objection to Claim (DE # 129, PACER 6–2)* ("Claim Objection") wherein ADF objected to the proof of claim filed on its behalf by the debtors. The issues between the parties concern the debtors' 2006 individual income taxes. By agreement of the parties, the pleadings were collectively tried on September 13, 2012. At the conclusion of the hearing, the court took these matters under advisement. For the reasons stated below, the Claim Objection is sustained; the Objection to the Second Modification is sustained; and the Motion for Release is denied.

### I. Jurisdiction

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L). The following order constitutes findings of fact and conclusions of law in accordance with Federal Rules of Bankruptcy Procedure 7052 and 9014.

### II. Findings of Fact

#### A. Initial Plan

Pre-petition, the debtors operated a tire and auto business.[1] On August 15, 2006, ADF threatened to shut down the business "due to sales tax liens," thus effectively ending the business on August 16, 2006. (ADF Ex. 2 at 28.) The debtors immedi-

---

1. Mr. White principally ran the tire and auto operation. Mrs. White is a county clerk of court.

ately filed their Chapter 13 case on August 17, 2006. (ADF Ex. 2.) Their schedules listed ADF as an unsecured priority claimant for sales and withholding taxes in the amount of $15,669.75. (ADF Ex. 2 at 16.)

The debtors' initial *Chapter 13 Narrative Statement of Plan* ("Plan") specifically provided payment in full to ADF of the $15,669.75 as a priority debt pursuant to 11 U.S.C. § 1322(a)(2). (ADF Ex. 4 at 3.) With respect to unsecured debts, the Plan provides as follows:

> Unsecured creditors shall receive a pro rata dividend from funds remaining after payment of administrative, long term secured/unsecured, secured, priority, child support and special non-priority unsecured claims and the debtor shall pay all projected disposable income into the plan for the benefit of unsecured creditors.

(ADF Ex. 4 at 3.) Section XIV, titled "OTHER PROVISIONS," states:

> Post-petition claims provided for under 11 U.S.C. sec. 1305 and 1322(b)(6) may be added to the plan by the Debtor and treated as though they were claims that arose before the commencement of the case.

(ADF Ex. 4 at 5.) The Plan was confirmed on August 17, 2007.[2] (ADF Ex. 7.)

ADF filed, on September 14, 2006, a *Proof of Claim* ("Claim") for $13,053.78 in sales and withholding taxes. (Debtors' Ex. 7 at 1.) The Claim references the debtors doing business as K & D Tire & Auto. (Debtors' Ex. 7.) The Claim is broken down as follows: $6,969.18 as a secured claim; $5,161.76 as an unsecured priority claim; and $922.84 as an unsecured non-priority claim. (Debtors' Ex. 7 at 1.) Neither party offered any testimony as to how ADF calculated the figures on the Claim

or why the debtors scheduled a slightly higher figure. The taxes set forth in the Claim all accrued pre-petition and, according to Mrs. White, solely represented sales and withholding taxes related to the defunct tire and auto business.

Post-petition, the debtors were placed under an *Order Granting Arkansas DF & A Motion for Strict Compliance Order (No Response Form–Revised 05–25–05)* ("Strict Compliance Order"), which required the debtors to timely report and pay in full all post-petition taxes due ADF. (ADF Ex. 6 at 1–2.) The debtors' failure to do so entitled ADF to seek an *ex parte* order of dismissal. (ADF Ex. 6 at 2.)

Sherry L. Daves ("Daves") served as the debtors' attorney and, by agreement, testified by affidavit at trial. (Debtors' Ex. 28.) Daves wrote and informed ADF of the debtors' filing and requested that any correspondence or questions be directed to her office. (Debtors' Ex. 8.)

*B. Overpayment Refund and 2006 Income Taxes*

The debtors obtained an extension beyond the April 15, 2007 due date for their 2006 individual income tax return. (Debtors' Ex. 1.) The debtors' 2006 personal income tax obligation accrued post-petition. Their 2006 tax return is dated October 2, 2007, and reflects a joint tax obligation of $4,837. (Debtors' Ex. 1 at 2.)

According to Daves, she provided a copy of the debtors' 2006 individual tax return to ADF on October 4, 2007. (Debtors' Ex. 28 at 2.) However, there is no documentary evidence of this correspondence other than a reference to having done so in a later letter dated November 10, 2009. (Debtors' Ex. 16.)

---

**2.** The court notes a *Modification of Chapter 13 Plan* filed on July 13, 2007; however, the parties did not introduce the modification, and, as such, the court will not consider it.

By letter dated October 3, 2007, marked as received on October 9, 2007, ADF returned to the Chapter 13 Standing Trustee's office overpayments on a number of bankruptcy cases, inclusive of the present case. (Debtors' Ex. 11.) The listing on the correspondence reflects a $5,717.50 overpayment. (Debtors' Ex. 11.) Distributions on ADF's pre-petition sales and withholding tax Claim resulted in this overpayment. (Debtors' Ex. 28 at 2.) The ADF letter goes on to state, "[t]his letter is also to advise your office that no further payments should be made on the claims filed by the Department of Finance and Administration in the above referenced cases." (Debtors' Ex. 11.)

The Trustee did not notify the debtors of the overpayment refund. The Chapter 13 Standing Trustee's office notifies the debtor only if it receives additional monies from some extraordinary or outside source. Examples of this would include a tax refund (as distinguished from a refund of an overpayment by the Chapter 13 Standing Trustee to a taxing authority) or an award from car wreck litigation. In these scenarios, the source would be something *other than* plan payments. Conversely, the Trustee does not notify the debtor if the source of the additional sum is simply *from* plan payments, in this instance the return of an overpayment to a creditor. The Chapter 13 Standing Trustee's office ultimately distributed the overpayment received on October 9, 2007, from ADF to the debtors' unsecured creditors. (ADF Ex. 8.) Daves testified that she did not receive notice of the overpayment refund, that the debtors did not receive notice, and that Daves learned of the overpayment refund only after the money had been distributed to unsecured creditors. (Debtors' Ex. 28 at 2.)

There is no evidence that ADF was aware of the 2006 tax obligation in time to offset the overpayment refund. In hindsight, the debtors wish ADF had offset the overpayment refund against their 2006 taxes. The debtors do not, however, contend that ADF had timely notice or should be penalized for having failed to do so.

### C. First Modification

The debtors filed a *Modification of Chapter 13 Plan* ("First Modification") on October 10, 2007. (ADF Ex. 8.) The First Modification, while preserving all other terms of the Plan, except as amended, provided the following with respect to ADF—"[a]n additional unsecured priority debt of $4,837 shall be added to the Debtors' plan and shall be paid in full over the life of the Debtors' bankruptcy." (ADF Ex. 8 at 1.) Daves testified that she filed the First Modification to pay the 2006 tax obligation over the life of the Plan. (Debtors' Ex. 28 at 2.) The First Modification, however, does not specifically state that the additional $4,837 amount to ADF was for the 2006 individual income taxes. (Debtors' Ex. 28 at 2.)

The First Modification did not increase the monthly payment set forth in the Plan. (ADF Ex. 8 at 1.) ADF did not object to the First Modification and does not contest that it received notice. The court confirmed the First Modification by its order dated November 6, 2007. (Debtors' Ex. 14.) The *Order Confirming Chapter 13 Plan as Modified on October 10, 2007* ("Confirmation Order") contained the following language:

Whenever the plan confirmed by this order refers to the debt, debts, claim or claims of creditors, such reference shall be construed to mean allowed claim or allowed claims. The total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount fol-

lowing the filing of an objection to such claim. (Debtors' Ex. 14.)

Almost two years lapsed. By letter dated November 3, 2009, ADF wrote the debtors and requested verification that they filed a 2006 tax return. (Debtors' Ex. 15.) By her letter dated November 10, 2009, Daves replied on the debtors' behalf. (Debtors' Ex. 16.) In the letter, Daves stated that she previously supplied a copy of the debtors' 2006 return on October 4, 2007, provided another copy, and asked "[p]lease communicate only with my office regarding this matter, rather than the Debtors directly, and file your proof of claim with the bankruptcy court." (Debtors' Ex. 16.)

ADF did not file a proof of claim for the 2006 taxes. ADF intercepted the debtors' 2009 state income tax refund of $465 and applied that amount to their 2006 tax indebtedness. (Debtors' Ex. 19.) Mrs. White testified that the debtors had not received any refunds from the state since 2006, despite being eligible. Mrs. White also indicated that throughout their bankruptcy they had notice that ADF was trying to collect the 2006 debt. Notice included a December 2, 2009 *Notice of Tax Adjustment* from ADF that reflected that penalties and interest had increased their 2006 tax obligation to $7,007.23. (Debtors' Ex. 18.) ADF also sent a *Notice of Tax Adjustment* on March 22, 2010, concerning the setoff of the debtors' 2009 tax refund. (Debtors' Ex. 19.)

An e-mail exchange between Daves and an ADF attorney, on June 10, 2010, discussed the 2009 state income tax refund. (Debtors' Ex. 20.) The e-mail exchange reflected Daves' awareness that the State of Arkansas had seized the 2009 tax refund for the debtors' 2006 tax obligation. (Debtors' Ex. 20.) In the same e-mail, ADF's attorney reminded Daves of the Strict Compliance Order concerning postpetition debt but conceded that he "really didn't want to bust them on that." (Debtors' Ex. 20.)

The Chapter 13 Standing Trustee did not distribute any additional money to ADF as per the First Modification because ADF did not file a claim. The Chapter 13 Standing Trustee's office did not independently undertake to notify ADF that it should file a proof of claim. The Trustee currently holds $3,887.26 in funds.

### D. Second Modification

In March of 2011, ADF forwarded to the Circuit Clerk of Pike County, Arkansas, a Certificate of Indebtedness asserting a lien on the debtors' real and personal property for the 2006 tax balance due and owing. (Debtors' Ex. 23.) By affidavit, Daves testified that she "repeatedly attempted to get [ADF] to file a claim so the taxes could be paid, but they never did so." (Debtors' Ex. 28 at 2.) Further, she recognized that as the "plan was coming to a close, it was clear the taxes would become an issue." (Debtors' Ex. 28 at 2.)

Accordingly, on August 18, 2011, the debtors filed a second *Modification of Chapter 13 Plan* ("Second Modification"). (Debtors' Ex. 21.) In the Second Modification, the debtors proposed "to pay no further payments to the Trustee."[3] (Debtors' Ex. 21.) Reciting that unsecured creditors "shall be paid no further," the debtors proposed the following modification concerning ADF:

Creditor's claim previously filed as secured in the amount of $6,969.18 and as

---

**3.** The Second Modification also stated that the debtors had already been in their case for sixty months.

priority in the amount of $5,161.76, and as unsecured in the amount of $922.84 shall be reclassified as priority claim in the amount of $6,753.55 and unsecured claim in the amount of $6,300.23. All priority tax claims have been paid in full through the Chapter 13 plan. [The Creditor refunded payments of $5,161.76, $340.11, and $215.63 to the Chapter 13 Trustee on October 22, 2007] All remaining tax indebtedness, including income, sales and withholding, shall be classified as unsecured general claims and shall be discharged upon the completion of the Debtors' plan. The Discharge of the Debtors' bankruptcy shall operate as a Release of all Notices of State Tax Liens and Certificates of Indebtedness filed of record against the Debtors, and upon Discharge the Creditor shall be required to file a Certificate of Release of Indebtedness.

(Debtors' Ex. 21 at 2–3.)

The Second Modification is confusing. The proposed reclassification equals $13,053.78, the same total set out in ADF's original Claim for pre-petition sales and withholding taxes. (Debtors' Ex. 7.) There was, however, no testimony at trial explaining the reclassification of the three amounts set forth in ADF's Claim. Both sides concur that the initial Claim amount of $13,053.78 had by then already been paid and the only remaining dispute concerned the 2006 personal income tax obligation. Yet, the Second Modification does not specifically reference the 2006 outstanding tax obligation either by year or amount; it only makes a generic reference to "[a]ll remaining tax indebtedness, including income, sales and withholding[.]" (Debtors' Ex. 21 at 2.) The reference to sales and withholding taxes is confusing as

the debtors knew there were no outstanding taxes of that nature at the time they proposed the Second Modification. The debtors did not offer any explanation as to why they are attempting to amend their plan to include and classify income taxes as a general unsecured claim without specifically identifying a known year and specific amount. The Second Modification also, according to Daves' testimony, seeks to provide for post-petition taxes for which no proof of claim had been filed. The three enumerated refund amounts equal $5,717.50, the correct amount of the ADF overpayment refund. (Debtors' Ex. 11.)

### E. Motion for Release

On the same day that the debtors filed the Second Modification, they filed their Motion for Release seeking release of any tax liens or certificates of indebtedness filed in Pike County, Arkansas. (ADF Ex. 11.) Daves testified that she filed the Motion for Release "to release any outstanding tax liens and discharge any remaining debt." (Debtors' Ex. 28 at 2.) The Motion for Release, however, does not cite any statute or rule authorizing the relief requested.

In the Motion for Release, the debtors refer to the date of their filing and the Claim filed by ADF in the aggregate amount of $13,053.78. (ADF Ex. 11 at 1.) The debtors then recite payments made through the Chapter 13 Standing Trustee's office aggregating $12,471.05.[4] (ADF Ex. 11.) Reference is then made to the October 22, 2007 refund in the aggregate amount of $5,717.50. (ADF Ex. 11.) In the next paragraph, the debtors state unequivocally—"[t]he Debtors have paid the secured and/or priority claims of the [ADF] in full according to the records of

---

**4.** Neither party offered any explanation why the distribution fails to equal $13,053.78. Both parties, however, agree that ADF did receive payment in full of its filed Claim; thus, this discrepancy will be ignored.

the Trustee and have completed their six-ty-month plan of debt reorganization." (ADF Ex. 11 at 1.) Following that statement, the debtors reference the Pike County, Arkansas, tax liens filed by ADF and state:

> Because all secured and/or priority claims of the [ADF] have been paid in full according to the records of the Trustee and all remaining claims are unsecured claim[s] which are subject to discharge, and the Debtors' case is subject to an imminent discharge, the Debtors request that this Court issue an order that the State Tax Liens and/or Certificates of Indebtedness be released.

(ADF Ex. 11 at 2.)

The pleading references only the $13,053.78 Claim amount filed by ADF, a figure comprised wholly of pre-petition sales and withholding taxes related to the defunct tire and auto business. (ADF Ex. 11.) No reference is made to the post-petition accrual of the 2006 income taxes. In one paragraph, the Motion for Release states that the Chapter 13 Standing Trustee made payments in September of 2007 and that the refund occurred in October of 2007, thus inferring that ADF had been paid in full in the bankruptcy and no outstanding indebtedness remains. (ADF Ex. 11.) But the debtors only later found out about the refund. Also, at the time they filed the Motion for Release, the debtors were fully aware that the refund was for an overpayment totally unrelated to the outstanding 2006 income taxes.

The Motion for Release also ignores the debtors' First Modification. By the time the debtors filed the Motion for Release, they were fully aware that the First Modification did not result in a distribution to ADF.

### F. Involuntary Claim

The next day, on August 19, 2011, the debtors, without ADF's participation or consent, filed the Involuntary Claim on ADF's behalf. (ADF Ex. 5b.) The Involuntary Claim purports to amend the September 14, 2006 Claim actually filed by ADF. (ADF Ex. 5b.) Daves testified that she filed the Involuntary Claim "as [ADF] never filed one of their own." (Debtors' Ex. 28 at 3.)

The Involuntary Claim is confusing as it relates to Daves' testimony, ADF's original Claim, and the Second Modification. Specifically, the Involuntary Claim recites the same claim amount as the ADF Claim, $13,053.78. (ADF Ex. 5b at 1.) That figure is consistent with the pre-petition sales and withholding taxes set out in ADF's Claim. (Debtors' Ex. 7.) There is not, however, any reference to the 2006 income tax liability on the face of the Involuntary Claim. The debtors suggest in the Involuntary Claim that $6,753.55 is entitled to priority. (ADF Ex. 5b at 1.) Again, as with the Second Modification, the record is silent as to how the debtors determined that figure. There is a self-serving addendum to the Involuntary Claim which states, in part, that the debtors "in their confirmed Chapter 13 plan, have proposed to pay the debt owed to the Creditor named in the attached [Involuntary Claim].... [Further], [t]he Debtors admit the debt owed as set out in the [Involuntary Claim] and do not deny the amount of the debt as set out." (ADF Ex. 5b at 2.) The Second Modification, filed the day before, does not reflect that the debtors intended to pay any further sum to ADF. (Debtors' Ex. 21 at 2.) The confirmed First Modification may have proposed to pay a sum equal to the 2006 tax debt, but the debtors by then knew that payment to ADF had not occurred and that the Second Modification proposed no further payments into the Plan.

Although, as Daves' affidavit implies, the debtors' purpose was to file a new or

amended proof of claim for post-petition debt (the 2006 personal income taxes), the 2006 tax debt is not clearly referenced on the face of the Involuntary Claim. The debtors did attach documentation to the Involuntary Claim related to the 2006 post-petition taxes. That documentation, a *Certificate of Indebtedness* dated March 28, 2011, references a 2006 debt of $6,553.98, a figure inconsistent with the $6,753.55 figure on the face of the Involuntary Claim. (ADF Ex. 5b at 1, 3.) Another attachment, a *Statement,* dated February 24, 2011, mentions a $7,021.25 balance. (ADF Ex. 5b at 4.) The Involuntary Claim is signed by Daves. (ADF Ex. 5b at 1.) The debtors did not offer any testimony explaining the confusing content of the Involuntary Claim.

### III. Analysis

The debtors filed the Involuntary Claim in an attempt to involuntarily include ADF's post-petition claim in their bankruptcy case. The debtors filed the Second Modification in an attempt to include their post-petition 2006 taxes in their bankruptcy and subsequent discharge. The debtors filed the Motion for Release to effectuate the anticipated discharge of their tax debt.

At trial, the debtors made two arguments supporting the proposition that ADF's debt should be discharged and any liens in favor of ADF released. The first argument is based on the Involuntary Claim. The second argument is based on the res judicata effect of the Confirmation Order confirming the First Modification. The Second Modification, if confirmed, would have the same effect.

ADF objected to the Involuntary Claim based principally on its rights as a post-petition creditor under section 1305(a)(1). ADF filed its Objection to the Second Modification objecting to the debtors' attempt to include, reclassify, and discharge their 2006 income tax debt. Additionally, ADF objected to the Second Modification on the basis of the debtors' failure to comply with the applicable provisions of Chapter 13 and bad faith.[5] Included in the former is the requirement that the proposed modification comport with section 1329 concerning post-confirmation modifications.

ADF is correct for the reasons stated below. First, the debtors do not have the right to file the Involuntary Claim. Second, the Confirmation Order confirming the First Modification does not have the desired effect of including in their discharge the debtors' 2006 income tax debt. Third, the Second Modification does not meet the requirements of section 1329 and thus violates section 1325(a)(1). Accordingly, the Claim Objection and the Objection should be sustained. The Motion for Release also fails as it is premised on the validity of the Involuntary Claim, the res judicata effect of the Confirmation Order, or the Second Modification.

#### A. *Proof of Claim*

The debtors argue that, under the Sixth Circuit's holding in *Mich. Dept. of Treasury v. Hight (In re Hight),* 670 F.3d 699 (6th Cir.2012), they are entitled to file a proof of claim on ADF's behalf thereby compelling ADF's participation in the debtors' bankruptcy as an unsecured creditor for the 2006 income tax debt such that the taxes should be discharged. ADF is not, however, required to file a proof of claim for post-petition taxes, and the debtors may not file a proof of claim on its behalf.

Section 1305(a)(1) specifically provides that "[a] proof of claim may be filed by any entity that holds a claim against

---

5.  Sections 1325(a)(1) and (3).

the debtor—(1) for taxes that become payable to a governmental unit while the case is pending[.]" 11 U.S.C. § 1305(a)(1) (2012). In a prior decision involving section 1305(a)(2), this court concluded that filing a proof of claim in these circumstances is discretionary. In *CenturyTel of N.W. Ark., LLC v. Laymon (In re Laymon)*, 360 B.R. 902 (Bankr.E.D.Ark.2007), this court stated:

> In relation to a post-petition claim, a debtor may "provide for the payment of all or any part of any claim *allowed* under section 1305" in the chapter 13 plan. In order to be "allowed," a creditor must first file a proof of claim. Section 1305 addresses the allowance and filing of post-petition claims. Under § 1305, "[a] proof of claim *may be filed by any entity that holds a claim* against the debtor ... that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan." Therefore, only the holder of a § 1305 claim may file a proof of claim for a postpetition debt. The debtor may not involuntarily "provide for" a debt that is not the subject of a properly filed and allowed post-petition proof of claim.
>
> Bankruptcy courts have held that, by definition, a debtor is not a holder of claim. Further, " 'a debtor may not file proof of a § 1305 claim on behalf of the holder of such a claim.' " Section 1305(a)(2) of the code does not require that postpetition creditors file a claim, and the debtor cannot force the creditor's participation through postconfirmation modifications.

*Id.* at 904 (internal citations omitted).

The holding in *Laymon* is equally applicable to section 1305(a)(1). The debtors'

argument that *Hight* compels a different result is misplaced. The court in *Hight* applied sections 501(c), 502(i), and 507(a)(8) in finding a permissible alternative for the debtor filing a proof of claim but noted that "[a] tax on income for a taxable year that ended *after* the date of the filing of the petition would not qualify as a priority claim under § 507(a)(8) and thus would not qualify for treatment as a prepetition claim under § 501(i)." *In re Hight*, 670 F.3d at 705 (emphasis in original). Unlike *Hight*, where the debtor filed her petition in January 2009, and the income taxes for 2008 were at issue, the debtors in this case filed their Chapter 13 petition on August 17, 2006, well before the conclusion of the taxable year at issue and the April 15, 2007 deadline for filing their 2006 return. *Id.* (ADF Ex. 2.) Having obtained an extension, the debtors filed their return and established a taxable amount in October, 2007.

ADF had no obligation to file a proof of claim for the post-petition personal income taxes; the debtors had no right to file the Involuntary Claim on ADF's behalf. ADF had the right to decline filing a proof of claim and allow the debt to pass through the bankruptcy case. Accordingly, ADF's Claim Objection is sustained, and the Involuntary Claim filed by the debtors is disallowed.

### B. *First Modification*

■ At trial, the debtors asserted that the confirmed First Modification is, under the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010), res judicata as to the inclusion of post-petition taxes to ADF. Accordingly, the 2006 income tax debt is discharged,[6] and ADF should be required to release

---

6. Or, dischargeable, as the debtors have not yet received a discharge.

any liens or encumbrances designed to effect collection.

In *Espinosa*, the debtor published a plan that proposed to discharge a portion of his pre-petition student loan debt without initiating an adversary proceeding as required by the Code. 130 S.Ct. at 1374. Specifically, the debtor's plan provided for the payment of principal but stated that the accrued interest would be discharged once the debtor repaid the principal. *Id.* The student loan creditor did not object to its treatment under the plan. *Id.* Years later, the student loan creditor attacked the confirmation order under Federal Rule of Civil Procedure 60(b)(4). *Id.* Recognizing that "[t]he Bankruptcy Court's order confirming Espinosa's proposed plan was a final judgment," the Court rejected the lender's arguments under Rule 60, stating:

> Given the Code's clear and self-executing requirement for an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error. But the order remains enforceable and binding on United because United had notice of the error and failed to object or timely appeal.

*Id.* at 1376, 1380 (internal citation omitted). Accordingly, the res judicata effect of the order confirming the terms of Espinosa's plan bound the creditor and resulted in the discharge of the accrued interest on the student loan debt.

The debtors' *Espinosa* argument, while not fully articulated in the pleadings or at trial, presents the issue of whether the confirmation of the First Modification achieved the debtors' desired effect of discharging their 2006 personal income taxes. The debtors attempted to pay their otherwise nondischargeable 2006 tax debt through the First Modification; ADF did not timely object; ADF declined to file a proof of claim; the debtors made their

four hundred dollar monthly payments to the Chapter 13 Standing Trustee; the Chapter 13 Standing Trustee did not make any distributions to ADF as per the First Modification because ADF had not filed a claim; and pursuant to the terms of the confirmed Plan and First Modification, the Chapter 13 Standing Trustee distributed to unsecured creditors both the overpayment refund and the monthly plan payments that otherwise might have been available to pay the post-petition taxes. Accordingly, the debtors argue that they included ADF in a confirmed plan; the debtors made all their payments; ADF failed to avail itself of the plan payments by refusing to file a proof of claim; the confirmed plan is res judicata; and thus the debt should be discharged. However, confirmation of the debtors' First Modification does not result in the discharge of their 2006 personal income tax. Two alternative bases compel this result.

First, if the Confirmation Order is res judicata, the binding provision in the First Modification is that the debtors pay ADF the full amount of their 2006 tax debt. This did not happen. Section 1305(a)(1) and the discussion above unequivocally support ADF's right not to file a proof of claim for the post-petition debt. The debtors could hope to pay the debt under their confirmed plan, but they could not require the creditor to file a discretionary proof of claim. *Espinosa* dealt with the treatment of pre-petition debt for which the creditor had filed a proof of claim. Here, the debtors proposed payment for a post-petition claim that had not been filed, in favor of a creditor who had no obligation to file. *Espinosa* does not stand for the proposition that a debtor can propose payment in full for a claim that has not been filed or allowed, not pay the claim, but demand a discharge.

Second, the First Modification is patently inconsistent with the terms of the debtors' confirmed Plan and the res judicata effect of the Confirmation Order. The original Plan contemplated the potential inclusion of post-petition claims, stating "[p]ost-petition claims provided for under 11 U.S.C. sec. 1305 and 1322(b)(6) may be added to the plan by the Debtor and treated as though they were claims that arose before the commencement of the case." (ADF Ex. 4 at 5.) Section 1322(b)(6) grants a debtor the right to provide for payment of all or some of any claim "allowed" under section 1305. 11 U.S.C. § 1322(b)(6) (2012). ADF did not file a proof of claim for the 2006 income taxes. Under section 1305, ADF had the right not to file a proof of claim. As discussed above, the debtors did not have the right to file a proof of claim on ADF's behalf. As such, ADF's post-petition tax claim has never been properly allowed. Section 1322(b)(6) specifically references a "claim allowed" under section 1305. The debtors acted inconsistently with their confirmed Plan concerning post-petition claims when they attempted to provide for a post-petition claim that had not been allowed.

Further, the Confirmation Order to the First Modification states as follows:

Whenever the plan confirmed by this order refers to the debt, debts, claim or claims of creditors, such reference shall be construed to mean allowed claim or allowed claims. The total amount of an allowed claim shall be the amount stated on a proof of claim properly filed by or on behalf of such creditor, unless the Court determines a different amount following the filing of an objection to such claim.

(Debtors' Ex. 14.)

The Confirmation Order is entitled to res judicata effect. In the absence of a properly filed proof of claim under section 1305, the First Modification attempted to provide for a debt that the Confirmation Order would not allow the debtors to pay. The Chapter 13 Standing Trustee appropriately used the debtors' overpayment refund and monthly payments to pay unsecured creditors their allowed claims based upon the specific wording of the Plan, the Plan as incorporated into the First Modification, and both the original confirmation order and the Confirmation Order confirming the First Modification.

*Espinosa* does not support the debtors' argument that the post-petition and unpaid 2006 personal income taxes are dischargeable in the absence of a filed proof of claim permitting payment as an allowed claim. The debtors violated their own Plan in providing for a section 1305 debt that was not allowed; the debtors knew throughout the entire course of their plan that ADF was not being paid; the debtors know ADF has not been paid; and the Confirmation Order on which they expressly rely restricts claims referenced in the Plan and First Modification to allowed claims that are the subject of a properly filed proof of claim. The relief requested in the Motion for Release cannot be granted insofar as it relies on a discharge based on the filing of the Involuntary Claim or the *Espinosa* argument. Alternatively, the Motion for Release could be granted were the court to confirm the Second Modification.

### C. Second Modification

In their Second Modification, the debtors sought to terminate payments to the Chapter 13 Standing Trustee and include, reclassify, and establish the dischargeability of all remaining tax indebtedness. Section 1329(a) governs the modification of Chapter 13 plans and prescribes as follows:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be

modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments;

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor [ ] if the debtor documents the costs of such insurance[.]

11 U.S.C. § 1329(a) (2012).

■ "Section 1329(a) contemplates modified plans based on changed circumstances that may increase or decrease payments to unsecured creditors." *In re Ireland,* 366 B.R. 27, 33 (Bankr.W.D.Ark. 2007). "[A] modification should be necessitated by an *unanticipated substantial change in circumstances* affecting the debtors' ability to pay." *Id.* (emphasis added) (citations omitted); *see also Educ. Assistance Corp. v. Zellner,* 827 F.2d 1222, 1226 (8th Cir.1987) (noting in dicta that a debtor could request a modification of his plan at a later date if he could "show a substantial change in [his] ability to pay"); *In re Savage,* 426 B.R. 320, 324 (Bankr. D.Minn.2010) (recognizing the long-standing principle that a debtor "must demonstrate some form of 'cause' for [a] modification"); *In re Justice,* 418 B.R. 342, 345 (Bankr.W.D.Mo.2009); *In re Nelson,* 189 B.R. 748, 751 (Bankr.D.Minn.1995) (stating that "[w]hen a proposed modification to the plan would reduce the plan payments, the burden falls on the debtor to demonstrate that her circumstances have suffi-

ciently changed adversely, to warrant the modification").

■ Although not explicitly stated in section 1329, the debtors must prove not only a substantial change in circumstances that affects their ability to make payments pursuant to a confirmed plan, but they must also put forth evidence that the substantial change was unanticipated. The debtors have not met this burden of proof. The Second Modification does not comport with any of the specific criteria set out in section 1329 or suggest any changed circumstances justifying the modification. The debtors filed the Second Modification based on Daves' recognition that "[a]s the Debtors' plan was coming to a close, it was clear the taxes would become an issue." (Debtors' Ex. 28 at 2.) Yet, the Second Modification neatly sidesteps the entire issue of the outstanding 2006 personal income taxes and deftly substitutes payment for the legitimately filed ADF Claim as the basis for a complete discharge of all taxes, including a nondischargeable post-petition tax claim.

■ The goal of the Second Modification is clear—the discharge of the debtors' 2006 taxes. The methodology is less evident. Specifically, the Second Modification references ADF's previously filed Claim aggregating $13,053.78. (Debtors' Ex. 21 at 2.) The proposed modification then outlines an unexplained reclassification of those numbers which, again, aggregate $13,053.78. (Debtors' Ex 21 at 2.) Then, the debtors state that "[a]ll priority tax claims have been paid in full through the Chapter 13 plan," followed by a reference to the October 2007 refund of $5,717.50. (Debtors' Ex. 21 at 2.) Thereafter, the Second Modification reclassifies any "remaining tax indebtedness, including income, sales and withholding taxes," as dischargeable unsecured claims. (Debtors' Ex. 21 at 2–3.) Finally, there is a self-

serving, proactive, and preemptive statement that the discharge "shall operate as a [r]elease of all [n]otices of [s]tate tax liens and [c]ertificates of [i]ndebtedness filed of record against the [d]ebtors" with a mandatory injunction requiring the ADF to release its liens. (Debtors' Ex. 21 at 3.) The Second Modification references the original ADF filed Claim for pre-petition sales and withholding taxes but does not reference the 2006 personal income taxes (the entire reason for the modification). The Second Modification neatly ignores the entire issue of the outstanding 2006 personal income taxes; payment for the legitimately filed ADF Claim is substituted as the basis for a complete discharge of all taxes, including a nondischargeable post-petition tax claim. In short, the Second Modification is not based on payment of the 2006 taxes, the First Modification or the Confirmation Order (neither of which are mentioned), or a basis recognizable under section 1329. The Second Modification is simply a new, and impermissible, tactic designed to discharge the 2006 post-petition taxes.

The complementary Motion for Release likewise ignores the 2006 taxes except for their inclusion in the anticipated discharge. There is no reference in the Motion for Release to the post-petition accrual of the 2006 income taxes, the First Modification, or the Confirmation Order. The debtors have seemingly abandoned the unrequited provisions of the First Modification. The Motion for Release proceeds on the simple premise that the debtors paid the pre-petition Claim amount and thus have satisfied all debt to the ADF, inclusive of post-petition debt for which no claim has been filed and is otherwise not amenable to discharge.

In one paragraph, the Motion for Release states that payments occurred in September of 2007, and that the refund occurred in October of 2007, thus fostering the inference that the creditor had been paid in full in the bankruptcy, had in fact been paid too much, had returned the overpayment, and that no outstanding indebtedness remains. But the debtors, as is now known from trial, did not know about the refund when made. They did know, however, by the time they filed the Motion for Release that the refund was for an overpayment totally unrelated to the 2006 personal income taxes and that the 2006 taxes were still outstanding. Yet, the debtors conclude that because they paid ADF's filed Claim, "all remaining claims . . . are subject to discharge[.]" The debtors apparently contend that this imprecise reference is sufficient to include the post-petition 2006 personal income taxes.

The Second Modification does not have a proper basis or purpose under section 1329 and may not be confirmed under section 1325(a)(1). To the extent that the Motion for Release is based on the Second Modification, the relief requested therein should be denied.

## IV. Conclusion

Accordingly, the Objection to the Second Modification is sustained on the basis of 11 U.S.C. § 1325(a)(1). The Claim Objection to the Involuntary Claim is sustained. The relief requested in the Motion for Release is denied.

IT IS SO ORDERED.